PROYOSTY, J.
The decedent owned 60 shares of the capital stock of the Eureka Homestead Society represented by a document reading as follows:
“New Orleans, La., Jan. 1, 1912. “$3,000.00. No. 120.
“The Eureka Homestead Society, New Orleans, Louisiana, promises to pay to the order of Patrick McGuire on or before five years from date three thousand and oo/ioo dollars for value received, with interest at the rate of five per cent, per annum, from date until paid.
“Interest payable semiannually on the first of January and July of each year.
“[Seal.] Eureka Homestead Society,
“[Signed] John McGraw, President. '
“[Signed] A. F. Livaudais, Secretary.
“New Orleans, La., Jany. 1, 1912.
“Favor of Patrick McGuire, Address, 403 Olivier St. Three Thousand Dollars.
“No. 120. $3,000.00'.”
Some ten days before his death, decedent executed and delivered to his brother, now administrator of his succession, the following instrument:
“Irrevocable Power of Attorney for Transfer of Stock.
“Know all men by these presents that I the undersigned hereby sell, assign and transfer to P. M. McGuire for value received-shares of the capital stock of -- standing in the name of the undersigned Patrick McGuire on the books of said institution as per following certificates, viz.:
“No. 120 dated Jan. 1st, 1912, for - shares and hereby irrevocably appoint and authorize - to make, for in the name and stead of the undersigned, the necessary transfer of said stock on the books of said institution, with power also to appoint and authorize one or more persons as a substitute or substitutes therefor, with like full power, hereby ratifying and confirming all that shall be lawfully done under the authorization herein granted. -
“Signed, sealed and given at New Orleans, this 26th day of March, A. D. 1917.
“[Signed] Patrick McGuire. [Seal.]
“Witnesses present: [Signed] A. F. Livaudais. Mrs. J. M. Nolan.”
Contemporaneously with the execution of this document, the decedent delivered to his said brother the key of the bank box wherein was contained said certificate of stock, with request that the brother take possession of same and cause same to be transferred to the brother’s name on the books of the society.
The brother, before the death of the decedent, caused this transfer to be made, and a new certificate, like in form and amount, to be executed in his own favor.
After the death of decedent, but befofe the institution of the present suit, he received from the society payment in full of the amount called for by said certificate.
This stock not having been included in the inventory of the succession of the decedent, the other heirs of decedent took a rule on the said brother of decedent, individually *517 and in his capacity of administrator of the succession of decedent, to show cause why the inventory should not he supplemented by including said stock as belonging to the succession.
The theory of the rule is that no consideration moved to the decedent for the transfer of said stock; that the transfer was an attempted donation; and that as such it was null because said stock was an incorporeal movable which could have been validly donated only by means of a notarial act.
Under the Code incorporeal things can be donated only by means of a notarial act:
“Art. 1536. An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.”
“Art. 1539. The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality.”
The Code defines corporeal and incorporeal things:
“Art. 460. Things are divided, in the second place, into corporeal and incorporeal.
“Corporeal things are such as are made manifest to the senses, which we may touch or take, which have a body, whether animate or inanimate. Of this kind are fruits, corn, gold, silver, clothes, furniture, lands, meadows, woods, and houses.
“Incorporeal things are such as are not manifest to the senses, and which are conceived only by the understanding; such as the rights of inheritance, servitudes and obligations.”
[1] Said certificate was an incorporeal thing. In form it was more like a promissory note than a certificate of stock; and a promissory note has been held by this court to be an incorporeal thing insusceptible of being made the subject of a manual gift. Morres v. Compton, 12 Rob. 76 ; Miller v. Andrus, 1 La. Ann. 237. But it may have been in reality a certificate of preferred stock — possessing, as such, the dual character of an interest-bearing money obligation and an ordinary certificate of stock. The charter of the society would have enabled us to be positive on that point; but it is not in the record, although it was offered in evidence. Its absence, however, is immaterial, since the said document such as it was had evidently been executed by the society and delivered to the decedent and was being held by him as the evidence of his holding in the society, or, in other words, as a certificate of stock, and was in consequence, necessarily, such as it was, a certificate of stock.
[2] A certificate of stock is an incorporeal right insusceptible of being made the subject of a manual gift, and hence under the Code said certificate could not have been made a donation of in the manner thus attempted.
A “certificate of stock” is defined, or its nature explained, by 14 C. J. 384, as follows:
“For the purpose of fixing the amount and subdivisions ■ of the respective contributions of the corporators to common fund, their proportionate interests in the corporate property, the voice which each shall have in its control and management, and the apportionment of the profits and losses of the enterprise, the whole of the capital stock is usually divided into equal portions called shares, and a share of the capital stock of a corporation is therefore the interest or right which the owner has in the management of the corporation, in its surplus profits, and upon dissolution, in all of its assets remaining after payment of its debts. It simply represents his proportional interest in the concern, in the capital stock, and net earnings, and fixes the amount which’ he has paid or must pay as his contribution to 'the corporate assets.”
On the same subject, 7 R. C. L. 196, has the following:
“Nature of Property in Shares. — The tangible property of a corporation and the shares of stock therein are separate and distinct kinds of property and belong to different owners, the first being the property of the artificial person —the corporation — the latter the property of *519 the individual owner. An assignment of corporate property does not carry the capital stock with it. Although incorporeal in their nature the shares are personal property. A certificate of stock in a land company is not title to land but a mere chose in action. And so shares of stock in a corporation are subjects of sale, mortgage, or pledge, and are liable to attachment and execution like other personal property. Because of the fact that shares of stock are intangible personal property, .it was held in an early case that trover would not lie for the conversion of stock although it might lie for the conversion of the certificate. * * * It is now universally held that the action will lie for the conversion of the stock itself. * * * ”
Touching the nature of a share of stock and also of a certificate of stock, this court, in the case of Sinnott v. Hibernia Bank, 105 La. 717, 80 South. 238, has this to say:
“It is true that shares of stock in corporations are movables. Article 474 of the Code expressly declares them to be movables, but they are not corporeal movables. Stockholders in a bank are not the owners of any portion of the bank’s property, though they are interested in its affairs, and indirectly and consequentially in its property. * * * The certificate of stock which [the stockholders] may hold does not represent any portion of its property, nor do they evidence any debt due to them by the bank. Article 1762 of the Code says that the contract must not be confounded with the instrument in writing by which it is witnessed, and so rights must not be confounded with the writings which evidence them. The certificates involved in this case are mere admissions of the Hibernia Bank that the party named therein is interested in the bank to the extent therein named.”
On tlie same subject, 7 R. C. L. 213, has the following:'
“A certificate of stock is authentic evidence of the title to stock, but it is not the stock itself nor is it necessary to the existence of the stock.
l“A stock certificate is a solemn and continuing affirmation by the corporation that the person to whom it was issued is entitled to all the right and subject -to all the liabilities of a stockholder in the company in respect to the number of shares named, and that the company will respect his rights and the rights of any one to whom he may transfer such shares by refusing to admit any new transferee to the rights of a shareholder except upon surrendering the certificate. A certificate of stock is generally recognized as representative of property and of occupying much the same status as a chose in action.”
[3] From the foregoing it is very plain that a certificate of stock is merely a paper evidence created for convenience, of the ownership of the share of stock; that it is not the thing which is in reality the subject of the ownership; that the thing which is in reality the subject of the ownership is the share of stock itself. And it is alsq very plain from .the foregoing that a share of stock does not come within the Code’s said definition of a corporeal thing, viz., “Corporeal things are such as are made manifest to the senses, which we may touch or take, which have a body,” .etc.; but that it comes within the Code’s said definition of an incorporeal thing. And it is universally so classed.
Shares of stock are incorporeal in their nature. 7 B. C. L. 196.
Shares of stock “are intangible and rest in abstract legal contemplation * * * ■ a species of incorporeal property.” 14 C. J. 387.
Defendant in rule interposed an exception of no cause of action, predicated on the theory that the decedent would have been without right to cause the said transfer to be annulled, and that the plaintiffs in rule— as his ordinary (not forced) heirs — have no greater right.
[4] No doubt, ordinary heirs have no greater right than the decedent; but, manifestly, by propounding interrogatories on facts and articles the decedent could have shown that the said transfer was intended to be, and was in fact, a mere donation; and, after this proof had been made, he could under the Code have demanded the annulment of the transaction on the ground now relied on by these heirs. Defendant in rule admits that it was a donation, and by said exception contests only the right to *521 show the true nature of the transaction. Citation of authority is not necessary on the point that the true nature of a ^ transaction can always be shown by probing the conscience of the adversary by means of interrogatories on facts and articles.
[5] Counsel say that interrogatories oh facts and articles may be propounded only after a cause of action has been shown; and that, until the absence of consideration has been made to appear, no cause of action has been shown. In so saying counsel lose sight of the fact that all that is necessary for laying the foundation for the propounding of interrogatories on facts and articles is to allege, not to prove, a cause of action. The function of the interrogatories and the answers to them is to make proof of an alleged cause of action.
[6] On the merits, defendant in rule contends that as the result of the express provisions of Act 180, p. 265, of 1910, entitled “An act to make uniform the law of transfer of shares of stock in corporations,” the title to a share of stock may be validly transferred, without consideration, or, in other words, as a donation, by the execution of a power of attorney to sell, assign, or transfer such as the one hereinabove transcribed executed in his favor by decedent.
That contention appears to us to be well founded. Section 1 of the said act provides that title to certificates of stock and to shares represented thereby can be transferred by the delivery of such a document and of the certificate of stock; and sections 6 and 7. •read together, provide that such a transfer is “effectual” even though the transferrer has received no consideration for same.
The judgment appealed from dismissing the rule to show cause is affirmed, at the cost of the plaintiffs in rule.
MONROE, C. J., and DAWKINS, J„ dissent.