## LE BLANC et al. v. VOLKER.
### No. 17209.

Court of Appeal of Louisiana. Orleans.

Nov. 4, 1940.

Rehearing Denied Dec. 2, 1940.

M. C. Scharff, of New Orleans, for appellant.

Ernest J. Robin, of New Orleans, for appellees.

WESTERFIELD, Judge.

This is a suit for collation. The plaintiffs, Philip LeBlanc, Mrs. Cecilia LeBlanc Wiltbank, Mrs. Hilda LeBlanc Seguin, Florence LeBlanc and Lloyd LeBlanc are the children and grandchildren of Christina Miller, widow of Joseph LeBlanc, whose succession was opened in the Civil District Court under the No. 217,429 of the docket thereof. Since the filing of this suit Philip LeBlanc died and his son, Louis LeBlanc, has been made party plaintiff. The defendant, Mrs. Barbara LeBlanc Volker, is the daughter of Christina Miller, widow of Joseph LeBlanc, and she is alleged to have been the recipient of twelve shares of stock of the Third District Homestead Association by gratuitous title in the form of a donation inter vivos, which should be collated under Article 1248 of the Revised Civil Code. Defendant, in her answer, admitted that the stock was transferred to her during the life of her mother, but contended that it was given for a valuable consideration and was not subject to collation.

There was judgment below in plaintiffs' favor in the sum of $740 and defendant has appealed.

The Court, a qua, held that defendant had failed to prove the alleged consideration for the transfer of the stock, and on this issue of fact we see no occasion to disagree with his findings. Defendant, nevertheless, contends that in the absence of proof of consideration, the transfer was valid as a manual gift and was not subject to collation.

"Neither the expenses of board, support, education and apprenticeship are subject to collation, nor are marriage presents which do not exceed the disposable portion." Article 1244, Revised Civil Code.

"The same rule is established with respect to things given by a father, mother or other ascendant, by their own hands, to one of their children for his pleasure or other use." Article 1245, Revised Civil Code.

■ A manual gift is not subject to collation. Can homestead stock be the subject of a manual gift within the contemplation of the Code?

"An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity". Article 1536, Revised Civil Code.

"The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality." Article 1539, Revised Civil Code.

"* * * Corporeal things are such as are made manifest to the senses, which we may touch or take, which have a body, whether animate or inanimate. Of this kind are fruits, corn, gold, silver, clothes, furniture, lands, meadows, woods, and houses.

"Incorporeal things are such as are not manifest to the senses, and which are conceived only by the understanding; such as the rights of inheritance, servitudes and obligations." Article 460, Revised Civil Code.

In the Succession of McGuire, 151 La. 514, 92 So. 40, 41, the decedent owned sixty shares of homestead stock. Ten days before his death he executed and delivered to his brother an "Irrevocable Power of Attorney for Transfer of Stock" as well as the stock certificate. The brother, before decedent's death, caused the transfer to be made upon the books of the homestead and a new certificate to be issued in his favor. After the death of the decedent, the brother received from the homestead, in cash, the full amount called for by the certificate. A rule was taken in the succession proceedings against the brother to show cause why the homestead stock should not be included in the inventory of the succession's assets, upon the ground that since the stock was an incorporeal movable, the donation, not having been made by authentic act, was, in view of Article 1536 and 1539 of the Revised Civil Code, a nullity. The Supreme Court held that a certificate of stock was an incorporeal right which could not be made the subject of a manual gift, but dismissed the rule to show cause on the ground that under the Uniform Stock Transfer Statute (Act 180 of 1910) the title to a share of stock may be validly transferred without consideration by the execution and delivery of a power of attorney to transfer together with the stock certificate. The Court said: "A certificate of stock is an incorporeal right insusceptible of being made the subject of a manual gift * * *."

The opinion in Succession of Sinnott v. Hibernia Nat. Bank, 105 La. 705, 717, 30 So. 233, 238, was quoted, as follows: "It is true that shares of stock in corporations are movables. Article 474 of the Code expressly declares them to be movables, but they are not corporeal movables. Stockholders in a bank are not the owners of any portion of the bank's property, though they are interested in its affairs, and indirectly and consequentially in its property. * * * The certificate of stock which (the stockholders) may hold does not represent any portion of its property, nor do they evidence any debt due to them by the bank. Article 1762 of the Code says that the contract must not be confounded with the instrument in writing by which it is witnessed, and so rights must not be confounded with the writings which evidence them. The certificates involved in this case are mere admissions of the Hibernia Bank that the party named therein is interested in the bank to the extent therein named."

But, said the court, "section 1 of the said act [Uniform Stock Transfer Statute] provides that title to certificates of stock and to shares represented thereby can be transferred by the delivery of such a document [power of attorney] and of the cer-

tificate of stock; and sections 6 and 7, read together, provide that such a transfer is 'effectual' even though the transferrer has received no consideration for same". The rule to show cause why the stock should not be listed as the property of the succession was, therefore, discharged. It will be remembered, however, that the question in that case was the title to the shares of stock and the court held that since the adoption of the Uniform Stock Transfer Act, the transfer of the stock in the manner pointed out in that statute as valid, superseded the provisions of the Articles of the Code in that respect. There was no question of collation involved. As a matter of fact, the heirs were ordinary and not forced heirs and could not exercise any greater right than the decedent could have done inter vivos, consequently, no question of collation could be raised.

In the case before us the validity of the transfer of the stock is not at issue, the point being whether the donation, valid or otherwise, of the homestead stock may be avoided and the stock or its value brought back to the succession.

■ Collation takes place exclusively between descendants, inter sese.

■ "The fundamental basis of the doctrine of collation is simply the presumption of law, that an ancestor intends absolute equality among his descendants in the final distribution of his property; that if he makes a donation to any one of them during his lifetime, it is merely an 'advancement d'hoirie' or advance on his hereditary share, to establish him in life, or for some other useful purpose, and that he intends to reestablish equality among his descendants in the final partition of his estate. Such is collation, nothing more and nothing less; and the whole doctrine consists in formulating rules to ascertain this intention, to define the circumstances wherein the presumption does or does not operate, and to preserve the equality spoken of in the absence of his express declaration of a contrary intention. In other words, property donated to a descendant is not considered absolutely severed from the estate of the donor until, on final partition it is determined (1) whether such donation is within the disposable portion; and (2) whether the donor intended it as an absolute donation, or only as an 'advancement d'hoirie'." Cross on Successions, page 506. See, also, Articles 1229 and 1235 of the Revised Civil Code.

■ The obligation to collate does not apply to collaterals. Succession of Watt, 122 La. 952, 48 So. 335. Donations inter vivos, by an ancestor, are subject to collation at the instance of his descendants. A manual gift, under Article 1245 of the Code, is an exception, but an incorporeal thing cannot be the subject of a manual gift. The requirements of the code that incorporeal things should be transferred by authentic act is superseded by the Uniform Stock Transfer Act, however, the provision with respect to manual gifts is not affected by any provision in the Uniform Stock Transfer Act.

■ The transfer of the homestead stock in this case was, in view of the provisions of the Uniform Stock Transfer Statute, a valid donation inter vivos, but it is, nevertheless, the subject of collation, since it is not and could not be the subject of a manual gift.

There is a stipulation in the record that the stock was worth $70 a share on January 6, 1935, the day on which it was transferred on the books of the homestead to the defendant. The plaintiffs contend, in their answer to the appeal, that the true value for purpose of collation should be $100 per share, the amount defendant received when she sold it on August 19, 1937. The judgment awarded interest at the rate of five per cent. from January 6, 1935. Defendant contends that interest should begin to run only from judicial demand.

■ When movables are collated, their value is as of the date of the donation.

"When movables have been given, the donee is not permitted to collate them in kind; he is bound to collate for them by taking less, according to their appraised value at the time of the donation, if there [be] any annexed to the donation. In default thereof, recourse may be had to other evidence to establish the value of these movables at the time of the donation." Article 1283, Revised Civil Code.

■ It is apparent, therefore, that the judge, a quo, was correct in holding that the amount to be collated was the value of the stock at the time of donation.

■ In Clark v. Hedden, 109 La. 147, 33 So. 116, it was held that collation of revenues is due from the time of the death of the deceased only when the suit to compel the same has been brought within the year, otherwise it is due only from judicial demand.

"The donee restores the fruits of what exceeds the disposable portion, only from the day of donor's decease, if the demand of the reduction was made within the year; otherwise from the day of the demand." Article 1515, Revised Civil Code.

In the Succession of Schonekas, 155 La. 401, 99 So. 345, 349, the Court held that no interest can be claimed until the heir is called upon by the notary to make partition, and he has declined to do so. The court said that "in the absence of an agreement to the contrary, debts do not bear interest, except from maturity" and that "advances in money or property received by an heir, and which he is obligated to collate, can only be collated, and the demand for collation can only be made when a partition of the estate is had; that the return of the money actually or by taking less, only accrues and is due on the day of partition". The holding in this case apparently overruled other decisions which had held that interest was due from the date of the death of the ancestor. Carroll v. Succession of Carroll, 48 La.Ann. 956, 20 So. 210; Succession of Weber, 110 La. 674, 34 So. 731. We conclude on this point that interest should run from judicial demand.

■■■ The record in the Succession of Mrs. Christina Miller, Widow of Joseph LeBlanc, including her last will, was offered in evidence and it appears that Mrs. Le-Blanc left the disposable portion of her property to the defendant and two other children and that she had five children. Her disposable portion was one-third. Article 1493, Revised Civil Code. Mrs. Volker was, therefore, entitled to one-third of one-third or one-ninth plus one-fifth of the remaining two-thirds or two-fifteenths, which, when added to one-ninth, amounts to eleven-forty-fifths of the whole. There were twelve shares of stock worth, when donated, $70 each, making a total of $840. Mrs. Volker would, therefore, be entitled to a credit of 11/45ths of $840, or $205.33. Collation is ordinarily effected by a return of the object of collation or its value to the mass of the succession, but in the present case, the executor has been discharged and the heirs placed in possession. Therefore, in view of the foregoing and of the agreement of all parties concerned, relative to this litigation, which is found in the record, there will be judgment in favor of plaintiffs in the sum of $840, subject to a credit of $205.33.

The Court below awarded plaintiffs a judgment for the full amount of the value of the stock which, due to a clerical error, it placed at $740 and allowed interest from the date of the donation. The judgment should run in plaintiffs' favor in the sum of Six Hundred Thirty-Four and 67/100 ($634.67) Dollars, with interest at the rate of five per cent. per annum from judicial demand, and it is so ordered, the plaintiffs and appellees to pay the costs of appeal, all other costs to be paid by defendant and appellant.

Amended and affirmed.

McCALEB, J., concurs.