BOLIN, Judge.
John B. Hall, III, filed an answer and re-convential demand opposing the inventory of the estate of his father, Dr. John B. Hall, Jr., who died intestate April 20, 1965. The only basis of the opposition is the inclusion in the inventory of thirty-three and one-third shares of stock in the Bank of Benton, represented by four certificates which were found in the bank box of decedent. John B. Hall, III, claims ownership of these shares by reason of endorsements thereon to him signed by his father on November 21, 1957 and witnessed by J. A. Dunnam, an officer of the bank. For written reasons the district court rejected Mr. Hall’s demands and he appeals.
The versions of the circumstances surrounding the transfer, as related by the two living witnesses, Dunnam and John B. Hall, III, are substantially the same. On the date in question Dr. Hall told his son to go to the bank and remove the stock certificates from his bank box and bring them to him at his nearby home. He telephoned Mr. Dunnam asking him to come with his son. When the three of them were together Dr. Hall endorsed the certificates on the back, in the places provided for such endorsements, in favor of John B. Hall, III, and J. A. Dunnam signed as witness. It is undisputed Dr. Hall handed the certificates either to his son or to Dunnam and his son, and together they took the certificates and replaced them in the bank box.
Appellees contend there was no delivery of the certificates, relying on an opinion of Mr. Dunnam; based primarily on hearsay testimony, that the decedent had been advised not to relinquish possession of the stocks until he knew he would not need them.
Claimant testified that, after endorsing the certificates and having them witnessed, his father handed them to him with the words “here they are, Bud”. He maintains it was his own idea to replace them in the deposit box and not to have them transferred on the bank’s records in order that his father would continue receiving dividend payments and would also be eligible to remain on the board of directors at the bank.
After trial of the opposition the trial judge held that since the stock had not been transferred on the records of the bank the Uniform Stock Transfer Act was not applicable. He further found no compliance with La.C.C. Art. 1536 governing donations inter vivos of incorporeal movables. He concluded Dr. Hall did not make an irrevocable gift of the stock to his son and they were properly inventoried in the estate of decedent.
*513 Contrary to the trial judge’s ruling we consider the Uniform Stock Transfer Act applicable and the sole issue to he whether the stock was effectively transferred to claimant under the provisions of that act, the pertinent section of which is found in La.R.S. 12:524 as follows:
“A. Title to a certificate and to the shares represented thereby can be transferred only: (1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or
(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person. B. The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or bylaws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferrable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent.”
Although the name of John B. Hall, III, is discernible as the transferee on the stock, the photostatic copies of the certificates filed in the record show that lines have been drawn through his name and the word ‘void’ written thereon. There is a complete lack of evidence as to who attempted to eradicate his name. Mr. Dunnam testified he knew it was not eradicated or stricken when he and John B. Hall, III, replaced the certificates in the safety deposit box, where they presumably remained until Dr. Hall’s death.
Appellees rely heavily on the decision in Fontenot v. Drewniak (La.App. Orleans 1938) 181 So. 619. In that case Mrs. Coreil, who was 70 years of age and ill at the time, endorsed 20 shares of homestead stock to Mrs. Drewniak, with whom she lived. After transfer of the stock on the books of the corporation and the issuance of a new certificate Mrs. Drewniak received the dividends which were, however, paid over to Mrs. Coreil. In addition, the certificate was returned to Mrs. Coreil who retained it in her possession until her death. Prior to her death she initiated proceedings praying to be recognized as owner. She alleged the stock had been transferred temporarily to Mrs. Drewniak for convenience only. The defendant contended Mrs. Coreil had given her the stock in recognition of acts of kindness and as payment for services rendered during the twelve years in which Mrs. Coreil lived with Mrs. Drewniak. Before judgment was rendered Mrs. Coreil died and her executor was substituted as party-plaintiff. The court held:
“From the fact that plaintiff retained possession of the certificate and required that the amount of all dividends be paid to her, we conclude that the placing of the stock in defendant’s name did not evidence an intention to donate at that time since the certificate was not then delivered. The uniform stock transfer act — No. 180 of 1910 — provides that title to shares of stock may be transferred by delivery of the properly indorsed certificate. But surely there is no delivery where it is required that the certificate be at once returned to the possession of the owner.”
We believe there are two features distinguishing the instant case from Drew-niak. Relying on the undisputed portion of the testimony, related above, we believe Dr. Hall manifested his intention to transfer title to the stocks to his son on November 21, 1957. Further, the fact they were replaced in Dr. Hall’s bank box does not negate the manifestation of this intention by the prior act of endorsement and delivery.
*514 We conclude the Uniform Stock Transfer Act sets up a method'of transferring an incorporeal movable consisting of stock, which supersedes the provisions of La.C.C. Art. 1536 requiring such donations inter vivos to be by authentic act. Succession of McGuire, 151 La. 514, 92 So. 40 (1922); LeBlanc v. Volker (La.App. Orleans 1940) 198 So. 398. Further we find the special endorsement appearing on these certificates together with the circumstances surrounding the act of endorsement and the unrebutted testimony of the transferee that the stock was handed to him by his father constitute a delivery in conformance with the requirements of La.R.S. 12:524.
For the reasons assigned the judgment of the lower court is reversed and it is now ordered that John B. Hall, III, claimant herein, be declared owner of the thirty-three and one-third shares of stock in the Bank of Benton and that this item be deleted from the inventory of the property of Dr. J. B. Hall, Jr.
Appellees are assessed with all costs.
Reversed and rendered.