322 So.2d 147 (1975)
Barbara PRIMEAUX, Plaintiff-Appellant-Relatrix,
v.
Gerald David LIBERSAT, Sr., Defendant-Appellee-Respondent.
No. 56093.
Supreme Court of Louisiana.
November 4, 1975.
*148 J. Minos Simon, J. Minos Simon, Ltd., Lafayette, for plaintiff-applicant.
Roger C. Edwards, Abbeville, for defendant-respondent.
TATE, Justice.
The issue before us concerns whether certain shares of stock issued to a husband in 1961, 1962, and 1966, during a marriage, are his separate property or, instead, form part of the community which existed between himself and his divorced wife. The issue arises in a suit by the wife, Barbara, filed after the judicial separation, in order to partition the property acquired during the marriage. Gerald and Barbara Libersat were married in 1960 and judicially separated in 1973.
The trial court held that the stock shares were the separate property of the husband, Gerald, since the consideration for them was paid, not by community funds, but instead by Gerald's father, with the intention of donating to his son these shares in two family-held corporations. The court of appeal reversed this determination. 307 So.2d 740 (La.App. 3d Cir. 1975). It held that none of the stock certificates had been validly transferred to the son, Gerald, for reasons to be noted. The intermediate court held that, since Gerald was not the legal owner of these stock certificates, they were neither his separate property nor the assets of the community formerly existing between him and his former wife, Barbara.
We granted certiorari, La., 310 So.2d 847 (1975), to determine:
I. Is Gerald Libersat the legal owner of the certificates of stock shares at issue?
II. If so, do the shares of stock represented by the stock certificates, issued to him during the community, form part of the community estate or instead, as a donation to him by his father, are they his separate property?
I. Is Gerald Libersat the legal owner of the shares of stock?
The shares of stock are in two corporations formed in 1961 by Gerald's father, Murphy Libersat, when he incorporated two self-owned businesses. Murphy furnished all the consideration for the shares of stock initially issued, and no issue exists as to him furnishing valid consideration for them.
At the time of the trial, Gerald was the owner of record of six stock certificates representing eleven shares in each of the two corporations, with the remainder of the shares in each being held by his father or other members of his family. The six certificates were all issued by the respective corporations either (a) as an original issue at the time of incorporation[1] or else (b) as a new certificate representing a transfer of shares formerly held by others,[2] after surrender, some with and some without endorsement, by the former shareholders to the corporation and cancellation *149 by it of the former shareholders' certificates.
In each instance, the new certificates showing Gerald's stock ownership were delivered to him,[3] and the issuance was at the time shown on the corporation books as representing the transactions above summarized. The evidence further shows, without substantial dispute, that in each instance the entire consideration for Gerald's stock was furnished as a donation by his father, Murphy.
The court of appeal held that none of the shares had validly been transferred to Gerald and, hence, belonged neither to him nor to his former community. Essentially, in view of the virtually uncontradicted testimony that the certificates issued to Gerald represented shares of stock donated to him, our intermediate brethren held:
As to the (a) shares issued to him at the time of original incorporation, the donation was invalid since not before a notary and two witnesses, as required by Article 1536 of the Civil Code;[4] and,
As to the (b) shares, issued to Gerald as a result of stock interests represented by certificates held by others and surrendered directly to the corporation (some of them without endorsement), the transfers were invalid because executed neither, with the formality required by Article 1536 for donations, nor with that required for transfer by the Uniform Stock Transfer Act, La. R.S. 12:621-43 (1950; renumbered in 1968), especially 12:624[5] thereof.
As to the latter or (b) shares, the court reasoned that transfer did not comply with the requirements of La.R.S. 12:624, either (1) because the former shareholder did not endorse the former certificates before surrendering them to the corporation or else (2) because, in the instances where the former certificate was endorsed by the former shareholder, it was not delivered to the transferee (Gerald) but instead directly to the corporation. Thus, despite the circumstance that the former certificate had been surrendered to the corporation and cancelled by it and a new certificate issued to Gerald for the shares represented thereby, our intermediate brethren held that such transfers were invalid because of these informalities in the transfers.
In so holding, the intermediate court overlooked: A person to whom a stock certificate is issued for valid consideration is regarded as the legal owner of it as against third persons. La.R.S. 12:601, 623. When a stock interest has been transferred by surrender of and cancellation of a former certificate, neither the corporation nor the former shareholder who acquiesced in such surrender can question the validity of the cancellation of the old certificate, or the validity of the new certificate or the transferee's title to it; at least, if the attack on his title is based on any irregularity in the method of transfer, such *150 as the failure to endorse the former certificate prior to its voluntary surrender to the corporation and its acquiesced-in cancellation by the latter.
See: Wisner v. Delhi Land & Improvement Co., 46 La.Ann. 1223, 15 So. 690 (1894); Richard v. Food and Services, Inc., 162 So.2d 213 (La.App. 1st Cir. 1964), certiorari denied 246 La. 347, 164 So.2d 351 (1954); Good v. Breazeale, 148 So.2d 766 (La.App. 4th Cir. 1963), certiorari denied 244 La. 141, 150 So.2d 766 (1963); Thomas v. Southdown Sugars, Inc., 95 So. 2d 721 (La.App.Orl.1957) (set aside on other grounds, 237 La. 245, 110 So.2d 738 (1959)); Harmeyer v. Anderson, 156 So. 53 (La.App.Orl.1934); 11 Fletcher Cyclopedia of the Law of Private Corporations, Section 5169 (Wolf rev. ed. 1971); 18 CJS Corporations § 393 (1939); 18 Am.Jur.2d "Corporations", Section 395 (1965). See also: Morgan v. Morgan Plan Co., 164 La. 140, 113 So. 795 (1927); Finn v. Ponsaa, 308 So.2d 352 (La.App. 4th Cir. 1975), certiorari denied 313 So.2d 238 (La.1975).
As the authorities cited show, Gerald Libersat is the legal owner and holds title to the stock issued to him for valid consideration, either at the time of initial issuance (the (a) shares) or else by the surrender to the corporation and cancellation of former certificates representing the shares of stock so transferred (the (b) shares). The transfer of the shares and the issuance of new certificates is not invalidated under general corporation law because of any informalities in the mechanics of the transfer before the cancellation of the former certificates by the corporation, with the acquiescence of the former shareholders, by which they transferred their title to the shares and also lost any right to contest Gerald's title to them on account of such informalities.
The court of appeal was thus in error in holding that Gerald never acquired title to the shares. However, the issue still remains whether, upon his acquisition of them, they became part of his separate estate or instead part of the assets of the community.
II. Are the stock shares represented by the certificates issued to Gerald his separate property, or did they instead form part of the assets of the marital community during which acquired?
The evidence shows without contradiction that the consideration for the stock shares was furnished by Gerald's father as a donation to him and that this donation was the basis for the corporations' issuance to Gerald of the stock certificates. We further can find no factual error in the trial court's determination that the donative intent of the father was to have the stock in these family-held corporations issued to Gerald as his separate property.
The wife argues, however, thatwhatever the donative intentthe stock shares were transferred to Gerald without the formalities required for a donation. Therefore, she argues, since the acquisition of these shares was not by a donation, they form part of the assets of the marital community during which acquired. Civil Code Articles 2334, 2402, 2404; R. D. M. Corporation v. Patterson, 255 La. 301, 230 So. 2d 820 (1970).
The error in this reasoning is the assumption that the valid issuance of the stock shares, shown beyond question to have been transferred with donative intent, could somehow be valid as transfers but nevertheless invalid as donations. As previously shown, the informalities complained of[6] as invalidating the stock issuance as donations, did not affect the validity *151 of the transactions themselves; by them, Gerald validly acquired title to the stock.
Thus, no notarial act under Civil Code Article 1536 was required in order to validate the father's payment or furnishing of the consideration to the corporation for it to issue the stock to the son, Gerald; for, as to the corporation, the act was a payment for the shares to be issued, not a donation. Likewise, for the reasons earlier noted, the issuance of the stock to the donee, Gerald, by the corporation was a valid and irrevocable transfer to him of the shares represented by the certificates validly issued; under stock-transfer law, they required no notarial act as between the corporation and the transferee, Gerald, to validate the issuance of the stock by the corporation to him.
The contention advanced is that, nevertheless, although both sets of transactions (transferor-corporation and corporation-transferee) are valid and effective under stock-transfer law, they are ineffective as donations because, as between the transferor (the father) and ultimate transferee (the son), no authentic act or other formality required for a donation of incorporeals was executed.
Stock shares have been held to be incorporeal movables, Civil Code Articles 460, 474, and thus not susceptible to manual delivery without formality under Civil Code Article 1539. Succession of McGuire, 151 La. 514, 92 So. 40 (1922); Succession of Sinnott v. Hibernia National Bank, 105 La. 705, 30 So. 233 (1901) (stock certificate still in alleged donor's name). As incorporeal movables, stock shares themselves are of the species of property which fall within the terms of Article 1536, insofar as requiring a notarial act of donation.
Nevertheless, if a stock share is validly transferred by reason of the stock-transfer legislation, which inter alia permits shares to be transferred without consideration paid to the transferor, La.R.S. 12:624, 629(4), its transfer is valid as a donation without the necessity of the additional formality of a notarial act. Succession of McGuire, 151 La. 514, 92 So. 40 (1922); Poole v. Poole, 270 So.2d 218 (La.App. 1st Cir. 1972) (syllabus 1); Succession of Hall, 198 So.2d 511 (La.App. 2d Cir. 1967), certiorari denied 250 La. 974, 200 So.2d 664 (1957); LeBlanc v. Volker, 198 So. 398 (La.App.Orl.1940), noted 3 La.L.Rev. 650 (1941) and 1 Loyola L.Rev. 99 (1941); Oppenheim, Succession and Donations (Volume 10, Louisiana Civil Law Treatise), Section 194 (1973).[7] See also Feldheim v. Plaquemines Oil and Development Co., 282 So.2d 469 (La.1973).
Accordingly, the present transfers are valid as donations of the stock shares to the son Gerald, despite the lack of a notarial act. Since the consideration furnished for them was intended to be a donation to him and his separate estate particularly, the shares issued thereafter are his separate property. Civil Code Article 2334, Succession of Hemenway, 228 La. 572, 83 So.2d 377, 382 (1955).
In interpreting French Civil Code Article 931, which is quite similar to our Article 1536, the French authorities have reached similar results. Despite the broad language of their article (similar to ours), the French have held that certain types of donations are dispensed from the requirement *152 of form (i. e., an act passed before a notary and two witnesses or also, in France, before two notaries). Planiol, Civil Law Treatise, Volume 3, Sections 2533, 2543A-2554 (LSLI translation, 1959); Aubry & Rau, Testamentary Successions and Gratuitous Dispositions, Section 659(2) (3 Civil Law Translations, 1969); Aubry & Rau, Obligations, Section 343B, p. 324 (1 Civil Law Translations, 1965).
Planiol notes that "it is often possible to make a donation, that means to cause someone to acquire a property value gratuitously, without drafting such a special instrument." Section 2533, p. 236. As examples of the valid creation of a property right in a donee, without a special instrument to such effect, Planiol and Aubry & Rau list donations through a purchase in the name of another, by assignment or endorsement of credits or negotiable instruments, by transfer of securities valid under securities law, by stipulations for a third person (the donee), by gratuitous renunciations of a right, by release of obligations, and by other means.
Planiol points out that these various transactions are valid, since in a form authorized by general law, but that "Any transaction through which some right is assigned without the demand for a counter-performance is a donation. It is an intentional procurement of a gratuitous enrichment." Section 2543A, p. 244. He also notes, "In cases of purchase in the name of another person, the object of the donation is not the acquired property, but the cash paid for it. It is an equivalent of an indirect manual gift, relieving the nominal purchaser from the payment of the price. One could say this is a payment made cum animo donandi [with the intention of giving]." Section 2545, p. 245. Planiol further suggests that the meaning of the code article is not that "all donations must be made before a notary," but rather that the article "requires the notarial form only if a special instrument is drafted to declare the donation" and if such special instrument is required to effectuate the transaction itself. Planiol, Section 2533, p. 236.[8]
For similar reasons, Louisiana interpretations hold the present transfers of shares of stock to the donee, valid under the stock-transfer act and effectively transferring irrevocable title to the shares to him, to be valid also as donations to him, because the consideration for their issuance was furnished by the donor with such donative intent.
We should note, however, that although this form of donation is exempted from the external formality of a notarial act otherwise required by Article 1536, it is subject to the substantive rules of donation, such as reduction and collation, etc. See LeBlanc v. Volker, 198 So. 398 (La.App. Orl.1940), noted 3 La.L.Rev. 650 (1941); Planiol, cited above, Section 2555; Aubry & Rau, Testamentary Succession and Gratuitous Dispositions, cited above, Section 659(g).

Decree
For the reasons stated, we find the shares of stock to form part of the separate estate of the husband-defendant. Consequently, we affirm the judgment of the district court dismissing the wife's claim that they are part of the community assets. We set aside the court of appeal judgment holding otherwise. All costs of *153 the appeal and of review by this court are to be paid by the wife-appellant; all other costs as provided by the trial court.
Court of Appeal judgment set aside, and district court judgment reinstated.
NOTES
[1] Five shares in Mutt's Welding Service, Inc., were issued to Gerald at the time of original incorporation in 1961 and delivered to him then.
[2] Six shares in Mutt's Welding Service, Inc., and another eleven shares in Murphy's Lease and Welding Service, Inc., all of which had originally been issued to the father, Murphy, another of his sons, his accountant, or his employee.
[3] In brief and argument it was indicated that the stock certificates issued to Gerald were kept in an office safe, as (the record shows) was his brother's. Gerald was an employee of the corporations and was secretary-treasurer of one of them.
[4] Article 1536 provides: "An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."
[5] La.R.S. 12:624, subd. A provides: "Title to a certificate and to the shares represented thereby can be transferred only:

"(1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or
"(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person. * * *"
[6] To recapitulate the informalities: As to the (a) shares, the lack of a notarial act, Civil Code Article 1536 (quoted in full in Footnote 1 above); as to the (b) shares, the failure of certain pre-requisites to cancellation of the former certificates (thus waiving these pre-cancellation pre-requisites) and the valid issuance of new certificates to Gerald as the legal owner.
[7] To the same effect is the recent decision in Smith v. Smith, 311 So.2d 514 (La.App. 3d Cir. 1975), certiorari denied 313 So.2d 840 (La.1975). There, however, the court (on rehearing) concluded that the shares of stock originally issued or transferred were issued in exchange for consideration furnished by community funds or services, 311 So.2d 525-27, and that (unlike the present instance) the husband did not overcome the presumption that stock shares acquired during the community are community assets, Civil Code Articles 2334, 2402, 2405. The court of appeal thus found, factually, that the consideration was not donated by the father.
[8] Louisiana law has similarly recognized indirect donations (the transfer by a third person to the donee at the donor's order) as being valid as donations, although without the formality required for a direct donation by a donor to a donee if made by a special instrument effecting such transfer: Succession of Gorman, 209 La. 1092, 26 So.2d 150 (1946), Noted, 21 Tul.L.Rev. 120 (1946); Gibson v. Hearn, 164 La. 65, 113 So. 766 (1927); Chachere v. Dumatrait, 2 La. 38 (1830). See also Comment, Manual Donation of Obligations, 9 Tul.L.Rev. 602 (1935).