326 So.2d 521 (1976)
Helen DARDEAU et al., Plaintiffs-Appellees,
v.
Bernel FONTENOT and Parkview Pharmacy of Ville Platte, Louisiana, Inc., Defendants-Appellants.
No. 5296.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1976.
Rehearing Denied March 4, 1976.
*522 Tate & Tate by Donald J. Tate, Mamou, James Edmond Mouton, Lafayette, for defendants-appellants.
A. Gaynor Soileau, Ville Platte, for plaintiffs-appellees.
Before MILLER, WATSON and CUTRER, JJ.
MILLER, Judge.
Defendants Bernel Fontenot and Parkview Pharmacy of Ville Platte, Louisiana, Inc., appeal the judgment awarding plaintiffs Helen Dardeau and her children ownership of half the shares of stock of Parkview Pharmacy. Defendant Fontenot claims to be sole owner of the stock. We affirm.
Plaintiffs are the widow and children of Dr. J. Winston Dardeau who died March 10, 1974. Fontenot is a pharmacist. The doctor and pharmacist started a pharmacy together in Dardeau's office in January or early February of 1970. Dardeau built a building to house the pharmacy next to his office and Parkview moved into the new quarters in April 1970. Fontenot arranged to incorporate the business with the understanding each would purchase $15,000 in stock in the Parkview Pharmacy. Fontenot *523 paid $15,000 cash for his stock when the corporation was created in June 1970, and Dardeau delivered his drug room supply of drugs, etc. valued at from $8,000 to $15,000 +.
Dardeau's interest in the corporation was to be in the nature of a silent owner, just as Fontenot's interest in a prior pharmacy corporation had been held in another's name. The first certificate of stock in Parkview was issued for 150 shares at $100 par value each in Fontenot's name and was by him endorsed (or made payable) to Dardeau. The certificate remained in the hands of the attorney who created the corporation and was delivered to Fontenot at Fontenot's request about a year later. The attorney who created the corporation never discussed the matter with the doctor, but always understood Dardeau owned a half interest in the corporation. Other certificates were issued to Fontenot and his wife for the remaining 150 shares of stock.
Dardeau received Director Fees approximating $20,000 each year from Parkview. After Dardeau's death Fontenot attempted to pay a $5,000 Director's Fee to the widow, but she rejected it contending the payment was not in line with prior payments. Dardeau had keys to the building and looked in on the business several times each week. When there was a dispute between Fontenot and Dardeau concerning the need for repair of a delivery truck or the purchase of a new one, the doctor's position was maintained and the old truck was repaired.
Fontenot contends they always intended that Dardeau might acquire a half interest in the corporation, but the stock was not delivered because the conditions were never metthe conditions being: 1) the doctor never contributed the original $15,000 as capital; 2) the doctor did not close his competing drug room; and 3) the doctor never agreed to a long term lease on the pharmacy building.
There is ample evidence in the record to support the trial court's conclusion that Dardeau owned half the stock in the corporation and Fontenot owned the remaining half.
The business arrangements between Dardeau and Fontenot were extremely complicated. Over long periods of time cash was delivered by the drug room employees to Parkview without receipts or records. All drug room employees were paid by Parkview. Fontenot admits Parkview Pharmacy commenced business in April 1970 with almost the entire medicine and drug supply formerly owned by the doctor and maintained in his drug room. Fontenot contends half that drug supply was his by virtue of the fact that he worked in the doctor's drug room for two months without drawing a salary. This would indicate Fontenot started working for Dardeau and received compensation in the $3500-$8000 per month range for that two months of work. His salary while working for competing concerns before that time had been $1200-$1400 per month.
The agreement concerning the closing of the doctor's drug room was difficult to comprehend. However, that agreement went into effect when Fontenot moved to the newly completed addition to the building. A clerk employed by Parkview Pharmacy operated the drug room and delivered daily receipts to Parkview. Parkview also paid premiums for hospital and disability insurance for the drug room employees and Dardeau's family.
The arrangement apparently proved unworkable and was terminated in July 1972. But it was it effect at the time of and six weeks prior to the incorporation of Parkview and the endorsement of the stock certificate for 150 shares to Dardeau. The drug room arrangement continued for two years thereafter. This agreement is incompatible with Fontenot's contention that closing the drug room was a condition precedent to the transfer of the stock. Dardeau could not have closed the drug *524 room without Fontenot's consent anymore than he could continue to operate it as a partnership for two years without his consent.
We reject the contention that one partner was expected to discontinue a mutual enterprise in order to become an equal shareholder in another mutual enterprise. Fontenot testified more than once that he would have been satisfied had Dardeau adequately accounted for drug room profits, implying no more would be required. But this problem arose subsequent to his endorsement of half the stock to Dardeau. It could not therefore affect the intended transfer.
After issuance and endorsement, all shares were returned to the attorney who drew them up. Under these circumstances, nondelivery to Dardeau is merely indicative of his desire to be a "silent partner," and not of an intent to delay effectuation of the transfer of ownership.
There is nothing in the record other than Fontenot's testimony to suggest he demanded a long term lease. On the contrary, Parkview Pharmacy was such a successful business that Fontenot was able to build a shopping center near the Parkview Pharmacy. The long term lease was not needed because the building housing Parkview was owned by Dardeau, the owner of half the corporate stock.
Several Parkview and drug room employees testified they understood Dardeau owned half the Parkview Pharmacy. Another physician was also of this impression, and Dardeau's family conducted their business with Parkview as owners of half the business with Fontenot's knowledge and approval.
Fontenot has failed to establish manifest error in the trial court's holding that Dardeau owned a half interest in the corporation.
It is relevant to note that the issue here does not relate to a pre-incorporation agreement, where shares were to be issued in return for a contribution or cash, property or services at the time the corporation is formed. It is on that basis we distinguish Griffith v. Hasha, 315 So.2d 778 (La.App. 3 Cir. 1975). There the stock certificate had plaintiff's name filled in, but it had not been executed by the officers of the corporation. The certificates came into plaintiff's hands, but such possession (or delivery) could effect no transfer of ownership because the certificates and shares they represent had never been issued. In this case, the shares were issued. It appears that the parties contemplated an exchange of the interest in the partnership in the drug room and Parkview Pharmacy for a like interest in the corporation.
Fontenot also contends LSA-R.S. 12:624 requires a reversal of the trial court's judgment. This statute is part of the Uniform Stock Transfer Act, and requires delivery of the stock certificate which was endorsed to Dardeau by Fontenot. Incidentally, the endorsement was witnessed by Fontenot's wife.
There are cases which seem to support a contention that delivery is essential to effect a transfer. We distinguish those since they deal with the problem presented when there is no other transfer within the terms of the Civil Code or other statute. These cases deal primarily with donations. Succession of McGuire, 151 La. 514, 92 So. 40 (1922); Succession of Hall, 198 So.2d 511 (La.App. 2 Cir. 1967). However, the certificate is recognized only as evidence of ownership of the stock as between the parties, and the Uniform Stock Transfer Act is not intended to provide the exclusive means for evidence of ownership of stock. Where the sale is completed, ownership passes even if delivery has not occurred. Finn v. Ponsaa, 308 So.2d 352 (La.App. 4 Cir. 1975).
Dardeau and Fontenot began their enterprise as partners and intended to exchange the partnership interest for a like *525 interest in the corporation. They operated Parkview and the drug room as a partnership for more than four months before incorporating. The executed stock certificate endorsed by Fontenot to Dardeau, the operation of the business, the understanding of employees and family members that Dardeau owned half the business, and portions of Fontenot's testimony support the court's finding that Dardeau owned half the stock in the corporation. It is relevant to note that all stock certificates were left in the possession of the attorney who created the corporation. Dardeau's failure to take possession of the executed and endorsed stock certificate does not affect the exchange of interest in the partnership for the interest in the corporation which was accomplished in accordance with LSA-C.C. arts. 2660 and 2661.
The trial court judgment is affirmed at appellants' costs.
Affirmed.