499 So.2d 1183 (1986)
INTERNATIONAL STEVEDORES, INC., et al.
v.
T. Gerald HANLON, Jr., Marcia D. Morgan and Hanlon and Morgan, Certified Public Accountants.
No. 86-CA-403.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1986.
Writ Denied February 6, 1987.
*1184 Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, L. Eades Hogue, Gerald J. Talbot, New Orleans, for defendants-appellants.
Richard J. Tomeny, Jr., Gauthier, Murphy, Sherman, McCabe & Chehardy, Metairie, for plaintiffs-appellees.
Before BOWES, GRISBAUM and WICKER, JJ.
BOWES, Judge.
On March 21, 1986, appellees, International Stevedores, Inc. (hereinafter I.S.I.), William S. Binnings, Jr., and Joseph E. Hassinger, filed a petition for Writs of Quo Warranto, Sequestration and Injunction against appellants, T. Gerald Hanlon, Jr., Marcia D. Morgan, and Hanlon & Morgan, Certified Public Accountants, a public accounting firm (hereinafter the partnership of Hanlon & Morgan). On March 31, 1986, the partnership of Hanlon & Morgan and Marcia Morgan filed exceptions of improper venue and Exceptions of No Right of Action and No Standing and Procedural Capacity to Proceed. On that same date, Hanlon filed Exceptions of No Right of Action and No Standing and Procedural Capacity to Proceed, Opposition to Quo Warranto and Motion to Dissolve Writ of Sequestration and Temporary Restraining Order. A hearing on all matters was held on April 2, 1986. The trial judge overruled the exception of improper venue filed by partnership of Hanlon & Morgan and Marcia Morgan. A hearing on all remaining matters was then held. Appellees presented uncontroverted testimony, after which the trial judge granted judgment in their favor. Appellants appeal the judgment signed April 3, 1986. We affirm.
E.S. Binnings, Inc., a closely held company wholly owned by seven members of the Binnings family, negotiated a contract with a Japanese shipping line to act as their agent to discharge Japanese manufactured *1185 automobiles primarily at the port of Houston. This contract would require involvement with longshoreman labor and consequently a commitment to pay funds into trust agreements even after this particular operation ceased. In order to avoid direct involvement with the labor contracts, the owners of E.S. Binnings, Inc., resolved to form another corporation called International Stevedores, Inc. (I.S.I.) to do the work. Joseph Hassinger, President and Chairman of the Board of E.S. Binnings, Inc., instructed T. Gerald Hanlon, general counsel for E.S. Binnings, Inc., a lawyer and certified public accountant, to from I.S.I. for this specific purpose. Hanlon was instructed to make the owners of I.S.I. the same as the owners of E.S. Binnings, Inc. He was further instructed to withdraw one hundred and fifty ($150.00) dollars from the account of each owner for capitalization for I.S.I.
In August, 1983, Articles of Incorporation of I.S.I. were drawn and Hanlon was listed as a director of the corporation. Hassinger testified that Hanlon's role was to oversee the business aspects of I.S.I. while remaining an employee of E.S. Binnings, Inc. Subsequently, Marica D. Morgan was appointed treasurer and the partnership of Hanlon & Morgan, Certified Public Accountants, was retained to perform accounting services for I.S.I. Hassinger testified that, because no stock certificates had been issued to the stockholders, on several occasions Hanlon was asked why he had not issued them. Hanlon merely replied that he had not gotten around to issuing them.
On March 3, 1986, members of the Binnings family, the true owners of I.S.I., held a series of meetings which resulted in the issuance of stock in equal shares to the Binnings family members, termination of the original board of directors and election of William Binnings and Hassinger as directors of I.S.I., dismissal of Hanlon as legal counsel, discontinuance of the accounting services of Hanlon & Morgan, and a change of address of I.S.I. The new directors then held a meeting and elected William Binnings as president and secretary-treasurer. On March 18, 1986, another meeting of the board of directors was held and Hassinger was elected president and William Binnings remained as secretary-treasurer. Additionally, James Burkart was elected vice-president.
On March 13, 1986, a letter was hand-delivered to Hanlon advising him of the actions of the shareholders and he was also requested to turn over all of I.S.I.'s books and records. Hanlon did not comply with the request of the officers of I.S.I. and this legal action ensued.
Appellants present two assignments of error:
1. The trial judge erred in determining that Jefferson Parish was proper venue for this action as to defendant Morgan and the defendant partnership.
2. The trial judge erred in maintaining the writ of quo warranto and in signing the judgment he signed on April 2, 1986.
This first assignment of error is based on the contention that the relevant parts of LSA La.C.C.P. art. 42 precludes the suit against Morgan and the partnership of Hanlon & Morgan in Jefferson Parish. LSA La.C.C.P. art. 42 states in pertinent part:
Art. 42. General rules
The general rules of venue are that an action against:
(1) An individual who is domiciled in the state shall be brought in the parish of his domicile; or if he resides but is not domiciled in the state, in the parish of his residence;
[ ...]
(2) A domestic partnership, or a domestic unincorporated association, shall be brought in the parish where its principal business establishment is located;
It was stipulated that Morgan and the partnership of Hanlon & Morgan are domiciled in Orleans Parish. It was also stipulated that Hanlon is domiciled in Jefferson Parish. This single cause of action was brought against these defendants in the *1186 district court of Jefferson Parish, albeit two of the defendants reside in the Parish of Orleans.
The following excerpt from the transcript of the April 2, 1986 hearing reveals the trial judge's reasoning for determining Jefferson Parish was the proper venue for this action.
THE COURT:
Suppose this matter was transferred to Orleans, the argument could be made by Mr. Gerald Hanlon that the proper venue as to the cause of action against him, if any, would be in Jefferson Parish.
MR. HOGUE:
I don't think we intend to raise ...
THE COURT:
Wouldn't that be a problem?
MR. HOGUE:
No, your Honor.
THE COURT:
Well then aren't we dealing  wouldn't we then have a problem of judicial economy ...
MR. HOGUE:
No.
THE COURT:
... we would  if I accepted your argument, transferred it to Orleans, Mr. Hanlon raised  General [sic] Hanlon raises the issue that he's a  domiciled in Jefferson Parish, how can the matter be litigated in Orleans as to Marcia Morgan and Hanlon and Morgan C.P.A.'s, and then in Jefferson as to Gerald Hanlon, which, I suppose, there are no rules prohibiting such duplicity of actions, but judicial economy would dictate that the matters be heard by one forum.
In a similar, but much older, case, Dezauche, a co-defendant, was a resident of St. Landry Parish and, for that reason, he asserted that the Court of Avoyelles was without jurisdiction ratione personae[1] to compel him to litigate in the latter forum the issues raised by plaintiff's petition although the other co-defendant was domiciled in Avoyelles. The Louisiana Supreme Court held:
If his contention be correct, and the suit were filed in St. Landry, we see no reason why the other defendants might not decline that jurisdiction upon the same ground. The cause of action cannot be split and two suits filed in different parishes, and, since affirmative relief is asked against both, that the town and Dezauche be enjoined from entering into a contract, or that it be annulled if already made, we can see no reason why the court below should not, and in fact we think it is the only one which may, entertain jurisdiction. [cites omitted]
St. Landry Lumber Co. v. Mayor and Board of Aldermen, 155 La. 892, 99 So. 687 (La.1924).
In a similar case, State v. Baynard, 176 La. 520, 146 So. 41 (La.1933), suit was brought in the Parish of East Baton Rouge against the State Auditor, who had his official domicile there, and Whitman, Superintendent of the State Bureau of Criminal Identification and Investigation, who maintained his domicile in Caddo Parish. In overruling the plea of Whitman to the jurisdiction ratione personae of the District Court of East Baton Rouge, the court held:
If this suit had been brought in the parish of Caddo, the auditor of the state might have declined jurisdiction there on the same grounds urged by the superintendent of the bureau in the present proceeding. Manifestly, the cause of action in this case cannot be split and two suits filed in different parishes. We see no reason why the court below should not entertain jurisdiction. In fact, it is the only one that may. [cites omitted]
*1187 We are obliged legally to follow the guidelines of the Louisiana Supreme Court, and we are of the opinion that, in the instant case, the cause of action not be split. To allow the change in venue for the co-defendants would require two separate suits in two different parishes for a suit with a single cause of action. As these claims arise out of one factual circumstance, this duplication of action would not be in the best interest of the parties or judicial economy. Smith v. Baton Rouge Bank & Trust Co., 286 So.2d 394 (La.App. 4th Cir.1973). Both Gerald Hanlon and Marcia Morgan were listed as a previous officer and/or director of I.S.I. and the Writ of Quo Warranto applied to each of them. It was established by testimony that all appellants were in possession of property belonging to I.S.I. Thus, it is clear that a single cause of action ensued. Accordingly, we find no manifest error on the part of the trial judge.
Appellant's second assignment of error is based on the contention the trial court allowed the appellees, with insufficient proof, to use an "extraordinary proceeding", as a vehicle for accomplishing what only could have been accomplished with sufficient proof by way of an ordinary proceeding. This argument is based on the assertion that the evidence adduced by appellee failed to establish that Gerald Hanlon and Marcia Morgan were holding office without authority as they were initially elected and could not be removed by Writ of Quo Warranto. They also contend that those who voted at the meetings held on March 3, 1986, were not shareholders, and could not, therefore, remove the appellants.
Initially, appellants state that a party seeking to maintain a Writ of Quo Warranto has the burden of proving defendant holds office without authority citing State ex rel Palfrey v. Simms, 152 So. 395 (Ct. of App. of La.1934). However, a careful reading of that case reveals that the court held the relators had the burden of showing that a number of the proxies sufficient to affect the result of the election were illegal and fraudulent. However, it is clear from LSA La. C.C.P. art. 3901[2] that the respondent in quo warranto proceeding has the burden to show by what authority he claims or holds office in a corporation. Clay v. Clay, 389 So.2d 31 (La.1979); Roy v. Humphries, 445 So.2d 130 (La.App. 3rd Cir.1984) writ denied 447 So.2d 1069 (La. 1984).
It is true, as appellants contend, that the function of a writ of quo warranto is narrow and its scope limited. Smart v. Woodard, 441 So.2d 460 (La.App. 2nd Cir.1983); Merchant v. Fuselier, 365 So.2d 852 (La. App. 3rd Cir.1978); Foreman v. Hines, 314 So.2d 460 (La.App. 4th Cir.1975). Appellants rely on the holding in Merchant v. Fuselier, supra for the proposition that quo warranto is an improper remedy. However, in that case, the plaintiffs were not personally claiming the offices in dispute as in the present case. In Merchant v. Fuselier, supra at page 854, the court went on to state:
The real issue is not by what authority defendants hold office, but the validity and enforceability of certain action taken to remove them from office.
In the instant case, as appellants contend, the initial election or appointment of Gerald Hanlon as director and Marcia Morgan as an officer is not questioned. It was the subsequent action by the Binnings family which divested the appellants of that authority which they contend they still maintain. Appellants contend that the trial court allowed the appellees, with insufficient proof, to use an extraordinary proceeding as a method for accomplishing what only could have been accomplished with sufficient proof by way of an ordinary proceeding. State v. Willis, 192 So. 138 (La.App. of La.Orl.) held that in a quo warranto proceeding the court may investigate *1188 whether or not votes were illegally cast. This is similar to the instant case, where the trial judge had to determine by what authority the Binnings family members acted. Thus, the action of the Binnings family at the meetings held March 3, 1986 must be carefully considered.
We do not find that the trial judge went beyond the scope of a quo warranto proceeding or committed manifest error by allowing testimony regarding the events that led to the March 3, 1986 meeting. The question of whether or not the Binnings family members were stockholders of the corporation for the purpose of holding the meetings of March 3, 1986 is certainly relevant. To make this determination, the trial judge would necessarily require background information.
At the hearing held on this matter, only two witnesses, Mr. Joseph Hassinger and Mr. William Binnings, Jr., testified. Both testified that Hassinger had instructed Hanlon to form I.S.I. for a limited purpose, make the owners of I.S.I. the same as the owners of E.S. Binnings, Inc., and to withdraw one hundred and fifty ($150.00) dollars from the account of each owner for capitalization of I.S.I. Subsequently, Hanlon was requested to issue stock certificates to the owners and, when asked why he had not done so, he simply stated that he had not gotten around to the task yet and offered no protest to doing so.
Appellants did not produce a single witness to contradict the testimony of the appellees and apparently made no real effort to establish their respective claims to being a legitimate officer and/or director. This raises grave questions as to their sincerity regarding this issue. When evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, where there is no indication in the record that the testimony should be rejected and we find none here. Robertson v. Scanio Produce, 449 So.2d 459 (La.1984); Randall v. St. Paul Fire and Marine Ins. Co., 470 So.2d 301 (La.App. 5th Cir.1985).
It is clear that no stock certificates were issued prior to the March 3, 1986 meeting. However, the record also reflects that the Binnings family relied on Hanlon to issue the certificates and he failed to do so. It would be a miscarriage of justice to now allow Hanlon, by his prior omissions, to assert the lack of certificates as a defense to the writ of quo warranto. We are cognizant of prior jurisprudence that holds that a certificate of stock is merely a paper evidence, created for convenience, of the ownership of the share of stock; that it is not the thing which is the subject of ownership, but the thing which is the subject of ownership is the share of stock itself. Succession of McGuire, 151 La. 514, 92 So. 40 (La.1922); Dardeau v. Fontenot, 326 So.2d 521 (La.App. 3rd Cir.1976); Finn v. Ponsaa, 308 So.2d 352 (La.App. 4th Cir. 1975) writ denied 313 So.2d 238 (La.1975). A stock certificate is prima facie evidence of corporate ownership, but it is to be distinguished from actual ownership which may be determined from all the facts and circumstances of a case. Fireplace Shop v. Fireplace Shop of Lafayette, 400 So.2d 702 (La.App. 1st Cir.1981).
Consequently, we find that the Binnings family members were, indeed, the rightful stockholders as one hundred and fifty ($150.00) dollars was drawn from their accounts for the capitalization of I.S.I. Therefore, we hold that the actions taken by the stockholders at the series of meetings on March 3, 1986 were valid. As Hassinger and William Binnings, Jr. were personally claiming the offices in dispute, quo warranto was the proper vehicle to bring this action. Further, as no stock certificates had been issued prior to March 3, 1986, it was incumbent on the trial judge to determine from all facts and circumstances of the case who owned the stock in I.S.I.
Accordingly, we affirm the judgment of the trial judge. All costs of this appeal are to be borne by the appellants.
AFFIRMED.
NOTES
[1] The concept of jurisdiction, under the Codes of Practice of 1825 and 1870, was subdivided into "jurisdiction ratione materiae" and "jurisdiction ratione personae." These twin concepts of Louisiana procedure corresponded closely with the "jurisdiction over subject matter" and "venue" of Anglo-American law. In more recent years, the LSA C.C.P. had adopted the Anglo-American concepts which represents little more than a realistic change in terminology. LSA-C.C.P. Introduction pp. 1-2.
[2] Art. 3901 Definition

Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or of powers.