## The Union Bank of Louisiana *v*. James Desban.

Defendant purchased certain shares of stock in the Union Bank of Louisiana, bind-
ing himself to pay plaintiffs a balance due thereon by his vendor.    In the con-
tract of sale the latter bound himself to transfer the stock to defendant on the books
of the Bank.   On an application to the Board of Directors, under the 29th section of
the act of 2d April, 1832, incorporating the Bank, to allow a transfer of the stock,
the proposition was approved by a majority of the Board, as required by law.   The
Bank having subsequently sued for the amount due on the stock assumed by de-
fendant, the latter pleaded that he could not be made liable till the stock was trans-
ferred to him.   *Held*, that the stipulation that the vendor should transfer the stock
on the books of the Bank, meant only that he should cause the defendant to be recog-
nized as a stockholder on its books ; and that the contract was complete as to all
parties interested, on the execution of the act of sale made under the authority
of the Directors.

APPEAL from the Parish Court of New Orleans, *Maurian, J.*
This case was submitted, without argument, by *Greiner*, for the
appellant, and *Denis*, for the plaintiffs.

. SIMON, J.   The defendant is appellant from a judgment which
condemns him to pay the sum of sixteen hundred dollars, with ten
per cent interest per annum, from the 1st of March, 1837, until
paid.

By a notarial act passed on the 28th February, 1837, John G.
Banks sold to the defendant several lots of ground with the build-
ings and improvements thereon erected, and  also forty shares of
the capital stock of the Union Bank of Louisiana, for the sum of
ten thousand and forty dollars, sixteen hundred of which the defen-
dant obligated himself to pay to the plaintiffs, *being the balance
due to the Union Bank from the said John G. Banks, on the forty
shares of stock transferred* by the said notarial act.   The vendor
further agreed' to transfer the forty shares sold by him, on the
transfer book of the Bank.   It appears, in evidence, that a few

days previous to the sale and transfer made by John G. Banks
to the defendant, an application was made by him to the Board of
Directors of the Union Bank, who, at their meeting of the 23d of
February, consented to the transfer subsequently executed, the
stock so transferred to be secured on the property sold by John
G. Banks to the defendant, which was already mortgaged in favor
of the Union Bank to secure the same stock.

The defendant having failed to comply with his obligation, the
present suit was instituted, which he attempts to resist on the
ground that he is not liable until the condition contained in the act
of sale is complied with, to wit, the agreement of the vendor to trans-
fer the bank stock mentioned therein to him.   The court be-
low, in rendering judgment in favor of the plaintiffs, ordered that
its execution should be stayed until the transfer to the defendant be
made, on the books of the Union Bank of Louisiana, of the forty
shares of stock sold him by John G. Banks.   Sometime after-
wards, the certificate of the Cashier of the Union Bank was pro-
duced, filed and recorded, in the words following, to wit :

"Union Bank of Louisiana, 25th April, 1842.
"I hereby certify that the forty shares of stock of this Bank
sold by John G. Banks to James Desban, according to the within
act of sale, were transferred by me by virtue of said act on the
books of this Bank, on the 19th of March last.
"FRED. FREY, Cashier."

Whereupon, the inferior court, considering that the condition of
the judgment had been satisfied, ordered the rule taken by the de-
fendant on the plaintiffs to show cause why the transfer of stock
should not be set aside, to be discharged; from which two judg-
ments the defendant has appealed.

The facts disclosed by the evidence show clearly, that the sale
and transfer of forty shares of the capital stock of the Union Bank
of Louisiana were made by John G. Banks to the defendant, with
the consent and approbation of the Directors.   This was in com-
pliance with the 29th section of the charter which provides, (Acts
of 1832, page 65,) that "whenever application shall be made by a
stockholder to transfer his stock and be discharged, such transfer
and discharge may take place upon the new stockholder's furnish-

ing mortgage to the satisfaction of at least a majority of all the Directors ; and, in all such cases of transfer and discharge, the vote shall be taken by yeas and nays." Under this section of the charter we understand that, when a stockholder intends or wishes to transfer his stock, the first step he has to take is to apply to the Board of Directors, to lay before them a statement of the circumstances under which the transfer is to be made, and of the new mortgage or securities which are to be furnished ; and that, if his proposition meet the approbation of a majority of all the Directors, he may then proceed to execute his deed of sale or transfer, which is to be considered as accepted beforehand by the Bank, and also the act by which the new mortgage or securities are to be given, without perhaps any other formality than spreading the name of the new stockholder and his number of shares on the books of the Bank. This last formality, however, if required, adds nothing to the validity of the transfer, which, being made with the consent and previous authorization of the Directors, has as much force and effect as if regularly accepted by a subsequent act. All this appears to have been done in the present case ; and although the act of sale contains a stipulation that the vendor is to transfer to the defendant his forty shares on the transfer book of the Bank, the only meaning of which undoubtedly was that he should cause the defendant to be recognized as a stockholder on the books of the Bank, we think that the contract was complete with regard to all the parties therein interested, and was binding upon them, and upon the Bank which had previously permitted and authorized its execution, immediately after the act of sale and transfer had been duly executed. To require more in order to give effect to the transfer, would be superfluous, and is not contemplated or provided for by the charter.

The defendant was, therefore, bound to pay the sum of $1600 to the plaintiffs, immediately after the execution of the act of sale ; and having thus made himself a debtor of the Union Bank, he became also obligated to pay the interest of ten per cent promised by the act of John G. Banks, in conformity with the 24th section of the charter. As he stood in Banks' place towards the Bank, from having assumed the mortgage executed by his vendor on the

10th of October, 1835, he necessarily became subject to the same obligations.

*Judgment affirmed.*