308 So.2d 352 (1975)
Dolores FINN
v.
John V. PONSAA et al.
No. 6620.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1975.
Rehearing Denied March 12, 1975.
Writ Refused June 6, 1975.
*353 Harry A. Burglass, Metairie, for plaintiff-appellant.
Triche & Sternfels, Risley C. Triche, Napoleonville, for defendants-appellees.
Before BOUTALL, SCHOTT and MORIAL, JJ.
MORIAL, Judge.
Plaintiff, appeals from that part of a judgment dismissing her suit for the return of $10,000.00 given to John V. Ponsaa.
Mrs. Finn verbally agreed to invest $10,000.00 with John V. Ponsaa to open a business to be known as Ponsaa's a la carte, a gourmet food store and wine cellar. She was to work in the business, as would others involved, without salary.
By virtue of a resolution of the board of directors of Ponsaa's Caterers, Inc., dated May 3, 1971, Mrs. Finn became vice president of the corporation. The corporation had been chartered in 1968; however, the corporation was dormant at the time of the agreement between plaintiff and Ponsaa. Plaintiff gave Ponsaa $10,000.00 on June 7, 1971. A business location was determined and merchandise purchased. Plaintiff was installed as manager of Ponsaa's a la carte. On August 26, 1971, Mrs. Finn provided the corporation with an additional $1,500.00 which was used to purchase certain speciality meats for the business.[1]
On August 31, 1971 plaintiff resigned her positions of vice president and manager. Via a letter of her attorney dated March 24, 1972 to Ponsaa she demanded the return of $11,500.00 the consideration for which she claimed was stock in Ponsaa's Caterer's, Inc., and formally advised Ponsaa any sale agreement or stock transfer agreement was voided, cancelled and rescinded. On March 30, 1972 a stock certificate for 20 shares of the common capital stock of Ponsaa's Caterer's, Inc. was delivered to Mrs. Finn.
*354 Plaintiff argues on this appeal that (1) there was no mutuality of agreement between her and Ponsaa; and (2) there was a failure of delivery of the corporate stock certificate and she therefore had a right to cancel the sale.
Plaintiff seeks to support her lack of mutuality of agreement argument on the basis that she was to receive 25% of the business for her $10,000.00; that she was not aware that a corporation existed or that she was purchasing stock of a corporation with the monies she gave Ponsaa.
Plaintiff's arguments are without merit. The stationery with which Mrs. Finn was familiar, shows printed thereon "Ponsaa's Caterers, Inc. dba Ponsaa's a la carte," she acknowledges she was the vice president of the corporation; she acknowledges that she was manager of Ponsaa's a la carte; she acknowledges that she signed all of the permits to operate the business; she was aware of the fact that the $10,000.00 was deposited in the bank account of the corporation and that merchandise and equipment were purchased for the business. She testified that Mr. Ponsaa told her that her stock would "go up' with the purchase of certain specialty meats which was the motivating factor in her putting up the additional $1,500.00. From the foregoing it is apparent to us plaintiff was aware of the fact that she was dealing with and had invested in a corporate entity.
The trial court found from the totality of the evidence that Mrs. Finn in fact purchased a twenty (20%) interest in the corporation, Ponsaa's Caterers, Inc., d/b/a Ponsaa's a la carte represented by twenty (20) shares of stock of the corporation. We see nothing in the record to justify overturning that factual determination.
Likewise there is no merit to plaintiff's contention that she had a right to cancel the sale of stock because of lack of delivery of the stock certificate.
The record discloses that no stock certificates were originally issued to any shareholder. When the charter was adopted on May 1, 1968, and amended on May 15, 1968, John, Leo, and Mrs. John Ponsaa declared that they were the owners of the corporation's stock in the amounts of 89%, 10% and 1% respectively. Regardless of the failure of the corporation at that time physically to issue the certificates we are referred to no provisions of the Business Corporation Law or Uniform Stock Transfer Act which would suggest that they were not the legal owners of the shares, and by virtue of their acknowledgement of ownership in the charter and amendment they would be estopped from denying such ownership. Accordingly, when Mrs. Finn invested she was purchasing corporate stock from John Ponsaa individually and not from the corporation. Volker v. Crescent City Wholesale Florist, Inc., 17 So.2d 372 (Orl.La.App.1944) is inapplicable to the facts of this case. Volker was concerned with the effect of the corporation's failure to issue a stock certificate to a shareholder, not with a transfer of stock by one shareholder to a prospective shareholder.
Did the failure to comply with the provisions of LSA-R.S. 12:624, which require endorsement and delivery of a stock certificate for a transfer of title to the certificate prevent a valid transfer of stock from taking place between Ponsaa and Mrs. Finn? The answer is no.
A stock certificate is merely evidence of the ownership of the stock and is not the stock itself. In Succession of McGuire, 151 La. 514, 92 So. 40, 42 (La. 1922), the Supreme Court said:
"* * * it is very plain that certificate of stock is merely a paper evidence created for convenience, of the ownership of the shares of stock; that it is not the thing which is in reality the subject of the ownership; that the thing which is in reality subject of the ownership *355 is the share of stock itself. * * *"
The stock of the corporation was acquired by the plaintiff with regard to defendants as soon as there was an agreement for the object and the price. A perfected contract of sale existed with the concurrence of three circumstances, to wit: the thing sold, the price and the consent. Here there was a sale and not an agreement to sell. Under the circumstances delivery of a stock certificate was unnecessary for a commutative contract. LSA-R.C.C. 2439 and 2456. The object or thing sold was the stock of the corporation.
LSA-R.S. 12:624 has reference to legal title only. Its main purpose is to confer on certificates for corporate shares the attributes of negotiability and to protect third persons who give value upon the faith of the certificates. Noncompliance with the statute does not invalidate a transfer between the parties. Equitable title to the stock was transferred to Mrs. Finn by the agreement of June 7, 1971. At that time Mrs. Finn had a right to demand and receive the certificate, or an action in damages if they could not be delivered. Good v. Breazeale, 148 So.2d 766 (La.App. 4 Cir. 1963).
Plaintiff participated in the management and affairs of the corporation as a shareholder. She participated as a shareholder and officer of the corporation in the expenditure of corporate funds. Plaintiff knew she was investing in a business. She cannot be heard to complain after such involvement, that she is not a shareholder simply because a stock certificate was not delivered to her contemporaneously with her investment.
Accordingly, in this case, failure to deliver a stock certificate does not give rise to the right to cancel the sale of stock.
For the foregoing reasons the judgment of the district court is affirmed.
Affirmed.
NOTES
[1] This $1,500.00 was ordered returned to Mrs. Finn by the trial court on the theory of unjust enrichment. No appeal was taken from this part of the judgment.