KING, Judge.
This appeal presents the issue of whether or not the trial court was correct in its determination of the status of assets and liabilities of this succession.
Willie J. Goudeau and his second wife, Patricia Ducote Goudeau (hereinafter referred to as the decedents), were killed in an airplane crash in Kenner, Louisiana on July 9, 1982. On October 6, 1983, Rhonda Ducote Gaspard, individually, and as Ad-ministratrix of the Succession of Patricia Ducote Goudeau, Floyd J. Ducote, Mae Desselle Ducote and Cynthia Ann Ducote, all heirs of Patricia Ducote Goudeau (hereinafter referred to as the Ducotes), plaintiffs-in-rule, filed a Rule to Show Cause against Darlene Goudeau Bordelon, individually, and as Administratrix of the Succession of Willie J. Goudeau, Kathleen Gou-deau Mayeaux and Gwendolyn Marie Gou-deau, all daughters of Willie J. Goudeau by a previous marriage (hereinafter referred to as the Goudeaus), defendants-in-rule. After the Ducotes filed an amended Rule to Show Cause, the Goudeaus filed an Answer and a Rule in Reconvention. The Ducotes then filed an Answer to the Rule in Recon-vention.
Both rules, which presented various disputed issues between the estate of Willie J. Goudeau and Patricia Ducote Goudeau, were tried on May 2, 1984, and after the hearing the trial court rendered a judgment which was read and signed on June 27, 1984. The Ducotes were granted a suspen-sive appeal on July 6, 1984. On appeal the Ducotes urge the following assignments of error:
(1) The trial court erred in granting the Goudeaus a credit of Eight Thousand Eighty-Three and 68/100 ($8,083.68) Dollars, being the amount of the proceeds paid from a Standard Life Insurance Company insurance policy on the life of Willie J. Goudeau and assigned by him to Union Bank as security for an indebtedness owed to the bank;
(2) The trial court erred in ordering the Estates of Willie J. Goudeau and Patricia Ducote Goudeau to reimburse Gwendolyn Marie Goudeau the sum of Four Hundred Twenty-six and 45/100 ($426.45) Dollars for repairs which she made to a community 1977 Glastron 15 and ½ foot boat, trailer and 1977 Johnson 75 hp. motor;
(3) The trial court erred in holding Darlene Goudeau Bordelon, Gwendolyn Goudeau and Kathleen Goudeau Mayeux to be owners of stock certificates in Cen-ia Equities, Inc., notwithstanding their endorsements and delivery of the certificates and regardless of the stock book receipts as shown on the stock certificate stubs; and
(4) The trial court erred in holding that the Goudeaus were entitled to recover from the Estate of Patricia Ducote Gou-deau the sum of one-half (½) of One Thousand Sixteen and 80/100 ($1,016.80) Dollars, or the sum of Five Hundred Eight and 40/100 ($508.40) Dollars, being *808 the proceeds paid to her estate by Commonwealth Life Insurance Company from an insurance policy on the life of Patricia Ducote Goudeau.
ASSIGNMENT OF ERROR NUMBER 1
In their first assignment of error, the Ducotes allege that the trial court erred in finding that the Goudeaus are entitled to a credit of $8,083.68 for funds which were paid to Union Bank from a Standard Life Insurance Company insurance policy on the life of Willie J. Goudeau, which policy was owned by Willie J. Goudeau and had been assigned by him to Union Bank.
Willie J. Goudeau originally obtained the life insurance policy on his life and named his three daughters as beneficiaries. However, on November 7, 1980, Willie Goudeau assigned the life insurance policy to Union Bank as collateral for his and Lay’s Games and Music, Inc.’s debts owed to Union Bank. His daughters, the Goudeaus, were never removed as named beneficiaries under the policy. After Willie J. Goudeau’s death, the Standard Life Insurance Company issued a draft, jointly payable to the three Goudeaus and Union Bank, in the amount of $8,703.20, being the entire proceeds payable under the policy. The Gou-deaus then each endorsed the draft to Union Bank and this sum was credited by Union Bank to pay the debt of $8,083.68 which was then owed to it by Willie Gou-deau and Lay’s Games and Music, Inc. Union Bank then paid the Goudeaus the remaining proceeds of the policy.
The Goudeaus were revocable beneficiaries of the life insurance policy, meaning that the owner of the policy, Willie J. Gou-deau, could at any time remove and replace them as beneficiaries. As revocable beneficiaries, the Goudeaus had no ownership interest in the life insurance policy which would have given them the right to prevent their father from assigning the policy to Union Bank for security on his loan.
The Assignment Of Life Insurance Policy As Collateral Form executed by Willie J. Goudeau specifically provides in Section B(l) that the assignee, Union Bank, has “... [t]he sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity...”. Section E(l) of the Assignment provides:
“[t]hat any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the policy had this assignment not been executed;

It was certainly within Willie J. Gou-deau’s legal right and power to assign this insurance policy to Union Bank. The Gou-deaus, as beneficiaries, were powerless to prevent this assignment. Under the terms of the Assignment, Union Bank acquired the sole right to collect the proceeds with the only duty being to pay any remaining balance of the proceeds, after satisfaction of the secured debts, to the named beneficiaries under the insurance policy. This in fact is what was done.
The Goudeaus, though named beneficiaries, were not the owners of the net proceeds from the life insurance policy on the life of their father, Willie J. Goudeau. Rather, they were only entitled to the remaining proceeds after the satisfaction of the debts owed to Union Bank, that were secured by the assignment of the policy. Thus, we find that the trial court was manifestly in error in holding that the Gou-deaus, as beneficiaries, were entitled to all of the proceeds from the policy, and in ordering that they were entitled to reimbursement of the sum of $8,083.68 from the estate of Willie J. Goudeau and the estate of Patricia Ducote Goudeau, or from the money on deposit in the account of Lay’s Games and Music, Inc.
We, therefore, reverse and set aside the trial court’s judgment awarding the Gou-deau’s credit for $8,083.68 of the funds in Lay’s Games and Music, Ine.’s account, totaling $19,160.96, and we now render judgment ordering that this account be divided equally, without any credit to the Gou- *809 deaus, one-half to the Succession of Willie J. Goudeau and one-half to the Succession of Patricia Ducote Goudeau.
ASSIGNMENT OF ERROR NUMBER 2 In their second assignment of error, the Ducotes contend that the trial court erred in ordering the estates of Willie J. Goudeau and Patricia Ducote Goudeau to reimburse Gwendolyn Marie Goudeau the sum of $426.45 for repairs which she made to the boat and motor owned as community property by the decedents.
LSA-C.C. Art. 2898 provides that:
“The borrower is bound to keep and preserve, in the best possible order, the thing lent. He can use it only in the manner for which it is fitted by its nature, or which is allowed by the agreement, under the penalty of damages.”
And, LSA-C.C. Art. 2902 provides that:
“If the thing be made worse by the effects of the use alone for which it was borrowed, and without any fault on the part of the borrower, he is not answerable for the same.”
In Roy Young, Inc. v. Delcambre, Inc., 233 So.2d 612 (La.App.3rd Cir.1970), writ den. 256 La. 358, 236 So.2d 496 (1970), this Court found that:
“If the thing lent is returned to the lender in a damaged condition, a presumption arises that the damage was caused by the fault or negligence of the borrower, and the burden of proof rests on the borrower to overcome that presumption by establishing that the damage was not due to any fault of his.” (Citations omitted.) Roy Young, Inc. v. Delcambre, Inc., 233 So.2d 612, at page 615 (La.App.3rd Cir.1970).
In Continental Casualty Co. v. Oken, 229 So.2d 393 (La.App. 2nd Cir.1969), the Second Circuit stated that:
“The loan of the automobile in the instant case being one for use, there was an obligation on the part of defendant to return it to the lender in as good condition as when it was received, except where it was worsened by the use alone for which it was borrowed and without any fault on the part of the borrower. LSA-C.C. Art. 2902. Thus, the burden is upon a borrower to establish that the loss or damage was not due to any fault of his.” (Citations omitted.) Continental Casualty Co. v. Oken, 224 So.2d 393, at page 394 (La.App. 2nd Cir.1969).
The facts in this case establish that Gwendolyn Goudeau took physical possession of the boat, motor, and trailer three or four months after her father and stepmother died and remains in possession. At the time she took possession, the boat’s steering cable was broken. In fact, the broken steering cable had prevented the use of the boat for the summer prior to the death of decedents. Gwendolyn Goudeau had the steering cable repaired at a cost of $165.64, which she paid. The Ducotes do not contest Gwendolyn Goudeau’s right of reimbursement for this amount.
After the steering cable was repaired, Gwendolyn Goudeau and other members of the family took the boat out to use it. This was the first time the boat had been used in almost a year. Darlene and Robert Gou-deau operated the boat to test it. After initially starting and running, the boat’s motor quit operating and the boat had to be towed to shore. This was the only time the boat was used prior to Gwendolyn Goudeau taking the boat to be repaired a second time. NewMac Marine overhauled the motor and replaced the points and plugs. The cost of these repairs was $260.91, which Gwendolyn Goudeau paid.
The Ducotes contend that Gwendolyn Goudeau is not entitled to reimbursement for the cost of repairing the boat’s motor in this instance because she has not overcome the presumption against her by meeting her burden of proving that the damage was not occasioned by any fault of hers. They maintain that there was no evidence at all to show that the damage to the motor occurred through no fault of her own.
The trial court, by finding that Gwendolyn Goudeau was entitled to full reimbursement, apparently thought that there was enough evidence to support a *810 conclusion that Gwendolyn Goudeau was not responsible for the damage to the motor. On review of the record, this Court recognizes that there are facts which would support a conclusion that there was no fault on the part of Gwendolyn Goudeau. First of all, there is the fact that the steering cable was broken prior to her taking possession of the boat. Because it was broken, Gwendolyn Goudeau had no occasion on which to run the motor prior to having the cable fixed. This would explain why she did not know of the faulty motor until sometime after taking possession of the boat and motor. There was also testimony that the boat had not been used for a year prior to the time that the motor quit running. A motor which sits for such a long time without being used is certainly susceptible to mechanical failure. The very nature of the repairs which were done on the motor, an overhaul and replacement of the points and spark plugs, are indicative of mechanical problems that arise over an extended period of time. Finally, there is the fact that the motor was being used for the first time by Gwendolyn Goudeau and the family, and then only for a short period of time, when the motor quit running. All of these facts could reasonably support a conclusion that no fault of Gwendolyn Goudeau caused the damage to the motor, and this decision will not be reversed as manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
For these reasons, the trial court’s judgment ordering that Gwendolyn Marie Gou-deau be reimbursed the amount of $426.45 equally from the estates of Willie J. Gou-deau and Patricia Ducote Goudeau will be affirmed.
ASSIGNMENT OF ERROR NUMBER 3
In their third assignment of error, the Ducotes allege that the trial court erred in finding that the Goudeaus are the owners of certain stock certificates in Cenia Equities, Inc. The Ducotes maintain that these stock certificates were endorsed in blank and delivered to Willie J. Goudeau and/or Patricia Ducote Goudeau, and thus were effectively transferred to the decedents as community property.
The stock certificates in question are Numbers 105, 106, 113, 114, 115, 116, 117, 118 and 120. These stock certificates were issued in the names of the Goudeaus. They were found, about a year after the death of decedents, in a filing cabinet belonging to Willie J. Goudeau and Patricia Ducote Goudeau. The stock certificates when found contained the blank endorsements of the Goudeaus on the backs of each of the respective stock certificates. The Goudeaus admit that the signatures of the endorsements are theirs.
LSA-R.S. 10:8-308 provides in part:
“(1) An indorsement of a security in registered form is made when an appropriate person signs on it or on a separate document an assignment or transfer of the security or a power to assign or transfer it or when the signature of such person is written without more upon the back of the security.
(2) An indorsement may be in blank or special. An indorsement in blank includes an indorsement to bearer ....” (Emphasis added.)
LSA-R.S. 10:8-309 provides:
“An indorsement of a security whether special or in blank does not constitute a transfer until delivery of the security on which it appears or if the indorsement is on a separate document until delivery of both the document and the security.”
However, it is recognized in Louisiana that in determining whether or not a transfer has been made, the Court may look to the intent of the parties. Succession of Dunham, 408 So.2d 888 (La.1981); Broussard v. Broussard, 340 So.2d 1309 (La.1976); Primeaux v. Libersat, 322 So.2d 147 (La.1975).
In this case, the trial court, in awarding the certificates in question to the Gou-deaus, held that:
“Notwithstanding any sign offs by any named stock certificate owners, the stock certificates as issued show the true own *811 ership of the stock of the corporation. This is true regardless of the stock book records as shown on the certificate stubs....”
In their answer to this appeal, the Gou-deans maintain that the evidence shows that there was no intent on their part to make a donation of the stock certificates to Willie J. Goudeau and Patricia Ducote Gou-deau. They maintain that they knew nothing of stock transactions and that they did not know why they indorsed the backs of the certificates, but probably only did so at their father’s direction. They claim that they probably indorsed the certificates in order to help their father obtain financing for the corporation.
However, the facts of this case point overwhelmingly to the conclusion that the Goudeaus had in fact transferred the stock certificates in question to Willie J. Goudeau and Patricia Ducote Goudeau. First, there is the fact that the certificates were all indorsed in blank by the Goudeaus and that all stock certificates had been delivered to and were found in a filing cabinet belonging to the decedents. These facts alone would meet the requirements of LSA-R.S. 10:8-308 and LSA-R.S. 10:8-309.
There is also evidence that the Goudeaus treated Cenia Equities, Inc. as being shared equally between the Ducotes and themselves until the Goudeaus discovered the stock certificates in question. Rhonda Du-cote Gaspard testified that this was her understanding, and the Inventory of the Succession of Patricia Ducote Goudeau and the Inventory of the Succession of Willie J. Goudeau both listed all the shares of Cenia Equities, Inc. as community property. It was also established at trial that the Gou-deaus were never paid dividends by Cenia. These facts are certainly inconsistent with their claim that they are stockholders in the corporation.
The Goudeaus also argue that it is “highly probable” that they only indorsed the certificates in order to help their father obtain financing for the corporation; yet, the evidence shows that their certificates were the only ones that were so endorsed. None of the stock certificates issued in the names of Willie J. Goudeau and/or Patricia Ducote Goudeau were indorsed in a like manner. Apparently none of the stock certificates were actually used to obtain financing for the corporation. This fact is inconsistent with the argument that Willie J. Goudeau was using the stock certificates to obtain financing for the corporation.
In light of all these facts, we find that the Goudeaus have not met their burden of proving that they did not intend to transfer the stock certificates, and that they remained the owners of the stock certificates in question. We therefore find that it was manifest error on the part of the trial court to find that the Goudeaus were still the owners of these stock certificates. For these reasons, we reverse the judgment of the trial court finding that these stock certificates belonged to the Goudeaus, and render judgment ordering that all stock in Cenia Equities, Inc. be divided equally as community property between the Succession of Willie J. Goudeau and the Succession of Patricia Ducote Gou-deau.
ASSIGNMENT OF ERROR NUMBER 4
In their fourth assignment of error, the Ducotes contend that the trial court erred in holding that the Goudeaus were entitled to recover $508.40 (one-half of $1,016.80) from the Estate of Patricia Ducote Gou-deau, which represented proceeds paid by Commonwealth Life Insurance Company under a life insurance policy on the life of Patricia Ducote Goudeau.
Patricia Ducote Goudeau obtained the policy in question on October 1, 1970, prior to marrying Willie J. Goudeau. She changed the named beneficiary to Willie J. Goudeau on November 20, 1973, after marrying him. Patricia was fifteen years younger than Willie J. Goudeau. They were both killed on July 9, 1982 in an air crash in Kenner, Louisiana.
LSA-C.C. Art. 936 provides:
*812 “If several persons respectively entitled to inherit from one another, happen to perish in the same event, such as a wreck, a battle, or a conflagration, without any possibility of ascertaining [ascertaining] who died first, the presumption of survivorship is determined by the circumstances of the fact.”
And, LSA-C.C. Art. 937 provides:
“In the absence of circumstances of the fact, the determination must be guided by the probabilities resulting from the strength, age and difference of sex, according to the following rules.” [1]
Then, LSA-C.C. Art. 939 provides:
“If those who have perished together were fifteen years of age or older and under sixty years, the male shall be presumed to have survived, where there was an equality of age, or a difference of less than one year, otherwise the younger must be presumed to have survived the elder whether male or female.”
In this instance, there is no ascertainable evidence that one spouse survived the other. Therefore, the presumptions of LSA-C.C. Art. 939 are applicable and Patricia Ducote Goudeau is presumed to have survived Willie J. Goudeau. Thus, Willie J. Goudeau’s heirs are not entitled to recover on this policy from the Succession of Patricia Ducote Goudeau.
In addition, LSA-R.S. 22:645 provides:
“Where the individual insured and the beneficiary designated in a life insurance policy or policy insuring against accidental death have died and there is not sufficient evidence that they have died otherwise than simultaneously, the proceeds of the policy shall be distributed as if the insured had survived the beneficiary, unless otherwise expressly provided in the policy.”
For these reasons, the proceeds of this policy owned by Patricia Ducote Goudeau are to be distributed to the Succession of Patricia Ducote Goudeau, who was the insured.
The Goudeaus argue that if a policy of life insurance is acquired during the marriage, its ownership is community, relying on Succession of Jackson, 402 So.2d 753 (La.App. 4th Cir.1981). However, the Gou-deaus are in error in their reliance on this case, because here, the insurance policy in question was not acquired by Patricia Du-cote Goudeau during her marriage to Willie J. Goudeau, but prior to her marriage. In Succession of Jackson, supra, the insurance policies were actually acquired during the marriage. Though premiums may have actually been paid during the marriage of decedents, the insurance policy would still be the separate property of Patricia Ducote Goudeau, with the community being entitled only to reimbursement for premiums paid with community funds. Succession of Jackson, supra. However, no evidence was presented regarding the use or amount of community funds which might have been used for payment of the premiums on this policy.
For these reasons, we find that the trial court was manifestly in error in determining this insurance policy to be community property and in awarding one-half (½) of the proceeds of the policy to the Goudeaus. We, therefore, reverse the trial court’s judgment, and hold that all of the proceeds from the life insurance policy on the life of Patricia Ducote Goudeau belong solely to her estate, which is entitled to the entire proceeds in the amount of $1,016.80.
JUDGMENT
For the reasons set forth above, the judgment of the trial court is affirmed in part, amended in part, and rendered. We affirm the portion of the trial court’s judgment awarding Gwendolyn Marie, Goudeau the sum of $425.55 for repairs to the boat, motor and trailer, owned by the successions of the decedents, which she paid from *813 her own funds, with this sum to be paid to her equally from the Successions of Willie J. Goudeau and the Succession of Patricia Ducote Goudeau. We reverse and set aside the portion of the trial court’s judgment in favor of Darlene Goudeau Borde-lon, Kathleen Goudeau Mayeaux, and Gwendolyn Marie Goudeau, awarding them a credit of $8,083.68, to be reimbursed to them out of the account of Lay’s Games and Music, Inc., because they were named beneficiaries on that certain life insurance policy issued by Standard Life Insurance Company on the life of Willie J. Goudeau on which the proceeds were paid to Union Bank, as assignee, and render judgment ordering that the Lay’s Games and Music, Inc. account be divided equally, without any such credit, one-half to the Succession of Willie J. Goudeau and one-half to the Succession of Patricia Ducote Goudeau. We reverse and set aside the portion of the trial court’s judgment decreeing that the ownership of stock and assets of Cenia Equities, Inc. be determined by the name of the person on the stock certificates to whom the stock certificate was initially issued, and render judgment ordering that all stock in Cenia Equities, Inc. be divided equally as between the Succession of Willie J. Goudeau and the Succession of Patricia Ducote Goudeau. We reverse and set aside the portion of the trial court judgment decreeing that Darlene Goudeau Bor-delon, Kathleen Goudeau Mayeaux and Gwendolyn Marie Goudeau are to receive one-half (½) of the proceeds of $1,016.80 paid by Commonwealth Life Insurance Company under a life insurance policy on the life of Patricia Ducote Goudeau, and render judgment ordering that all proceeds from this life insurance policy be paid solely to the Succession of Patricia Ducote Goudeau.
All costs of this appeal are assessed to the Goudeaus, defendants-in-rule and appel-lees.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.

. Act 1985 No. 526, effective September 6, 1985, amends and re-enacts LSA-C.C. Articles 937 and 938, and repeals LSA-C.C. Art. 939 relating to presumptions of survivorship. Sex is eliminated as a factor, leaving age as the only remaining factor.