558 So.2d 333 (1990)
Pierre Valcour MILLER, Plaintiff-Appellant,
v.
LAKE ARTHUR RECLAMATION CO., LTD., et al., Defendants-Appellees.
No. 88-1239.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
Writ Denied May 18, 1990.
*334 Baggett, McCall, Roger G. Burgess, Lake Charles, Gerald Stewart, New Orleans, for plaintiff-appellant.
Scofield, Gerard, John B. Scofield, Patrick D. Gallaugher, Jr., Tynes, Fraser & Roach, David Fraser, Lake Charles, for defendants-appellees.
Before FORET, STOKER and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether a transfer of corporate stock between shareholders is valid.
On November 21, 1979, Mrs. Martin O. Miller (hereinafter Mrs. Miller) sold 324 shares of stock owned by her in Lake Arthur Reclamation Co., Ltd. (hereinafter LARCO) to her son, M.O. Miller, II (hereinafter M.O. Miller). M.O. Miller held the stock certificate representing the shares until March 5, 1982 when he wrote to LARCO requesting that the shares be transferred in the corporate stock register to his name and a new certificate for the shares issued to him. LARCO's secretary responded to M.O. Miller's request by sending him a letter quoting its Articles of Incorporation which required that the corporation be given thirty days notice before any sale of stock and providing that during that time the corporation and its stockholders would have the first privilege of purchasing the stock, after which time it could be sold on the open market. The Board of Directors of LARCO later approved the transfer of the stock to M.O. Miller. Pierre Valcour Miller (hereinafter plaintiff), a brother of M.O. Miller, sued LARCO, some of its officers and directors, M.O. Miller, and his mother, Mrs. Miller, to set aside the sale of the stock and seeking other relief. After a trial on the merits, the trial judge rendered judgment in favor of the defendants and against plaintiff rejecting his demands. A formal written judgment was signed. Plaintiff timely appealed the judgment. We affirm.

FACTS
LARCO, a closely held corporation, was incorporated in 1910. Stock in LARCO had, for the most part, been transferred, through the family lines of the original incorporators, by donations, inheritance, and sales.
In 1974, Dr. M.O. Miller died, survived by his wife, Mrs. Miller. Dr. and Mrs. Miller had eight children, including M.O. Miller and the plaintiff. Dr. Miller's succession was completed in 1979. In that succession, *335 648 shares of LARCO stock were listed as community property. The Judgment of Possession ordered Mrs. Miller placed into possession of 324 shares, and each of the children were placed into possession of 40 shares of this community property. The remaining four shares were redeemed by LARCO for $50.00 a share.
After receiving his 40 shares, M.O. Miller became interested in acquiring more shares in LARCO. He wrote a letter, dated October 11, 1979, to his mother and brothers and sisters, including plaintiff, stating that he would be interested in buying their shares for $50.00 per share, the same price paid by LARCO, if any of them were interested in selling their shares.
None of M.O. Miller's siblings sold their shares to him. Mrs. Miller offered to give him her 324 shares. However, M.O. Miller insisted on buying the shares from his mother, and, on November 21, 1979, he deposited $16,200.00, representing the purchase price of the 324 shares at $50.00 per share, into Mrs. Miller's bank account. At that time, Mrs. Miller endorsed her stock certificate to M.O. Miller. It was not until March 5, 1982 that M.O. Miller requested that the stock be transferred on LARCO's books. On that date, he wrote a letter to Everett R. Scott, Jr., secretary of LARCO, requesting the transfer.
Mr. Scott informed M.O. Miller, by letter dated March 25, 1982, that it was necessary for him to comply with the requirements of Article III of LARCO's Charter, which states:
"Any stock holder may sell, assign or transfer his stock in this corporation, provided thirty days prior notice of such intention to sell, assign or transfer the same be given the company, and other stock holders shall have the first privilege of purchasing same, after which thirty days notice the said stock may be sold in the open market."
Nevertheless, on June 3, 1982, after approval by the Board of Directors, the stock was transferred on LARCO's books. According to testimony of some of the directors, the Board believed that Article III of the Corporate Charter only applied to "open market" sales and transfers, not to transfers within shareholders' families and among shareholders.
On September 5, 1985, plaintiff filed this suit against LARCO, and certain of its directors and officers, requesting that the stock transfer to M.O. Miller be vacated, recalled, and cancelled as well as seeking other relief. M.O. Miller and Mrs. Miller were later added as defendants to the suit because they were indispensable parties. After trial on the merits, the trial court ruled that since the purported stock transfer restriction was not on the face of the stock certificate itself, and neither M.O. Miller nor Mrs. Miller had actual knowledge of the restriction, the sale of the stock between them was not void. Plaintiff appealed claiming that the trial court erred in finding the sale was complete upon delivery of the certificate to the purchaser, and that at the time of the sale, the purchaser had no actual knowledge of the stock transfer restriction.

LAW
Due to its vagueness, there is some doubt as to whether the stock restriction found in LARCO's Articles of Incorporation, and quoted above, is a restriction which can be enforced by the courts. Nevertheless, we will not address this issue because even assuming that the restriction could apply to the stock transfer disputed in this case, the sale of the stock from Mrs. Miller to M.O. Miller can not be invalidated because of the stock sale restriction.
Subsection F of La.R.S. 12:57 states:
"F. (1) No by-law or other restriction on the transfer of shares, (2) no provision for compulsory offer of shares of its own stock for purchase by, or sale to, the corporation, (3) no agreement among shareholders binding on others than the parties signatory thereto, and (4) no lien or privilege in favor of a corporation on shares of its own stock, shall be recognized or enforced, unless such restriction, provision or agreement, or the right of the corporation to such lien or privilege, is set forth or summarized, or a reference thereto and information as to *336 where the same may be inspected is contained, in the certificates representing the corporation's shares."
La.R.S. 12:57(F) was augmented by La.R.S. 10:8-204 which became effective on January 1, 1979. Thibodeaux v. Pioneer Land Development, Etc., 420 So.2d 1162 (La. App. 5 Cir.1982), amended, 423 So.2d 1178 (La.1982). La.R.S. 10:8-204 provides:
"Unless noted conspicuously on the security, a restriction on transfer imposed by the issuer, even though otherwise lawful, is ineffective, but this provision shall not dispense with the requirements of R.S. 12:57(F) and R.S. 12:210(D). A restriction on transfer shall be effective, even if the restriction is not noted on the certificate, against persons having actual knowledge of the restriction."
In the present case, it is undisputed that no restriction or reference to any restriction on the transfer of shares of stock was printed on the stock certificate issued by LARCO to Mrs. Miller. For this reason, unless M.O. Miller had actual knowledge of the restriction, the restriction was ineffective as to the sale from his mother to him. La.R.S. 12:57(F); La.R.S. 10:8-204. The trial court made a factual finding that both Mrs. Miller and M.O. Miller had no actual knowledge of the restriction, and after careful review of the record, we also find the record devoid of any evidence that Mrs. Miller and M.O. Miller had actual knowledge of the stock restriction.
Plaintiff does not dispute this rule of law, but, rather, contends that the sale of stock to M.O. Miller was not complete until the stock certificate was tendered for transfer on the corporate stock register and that, at the time of its recordation on the corporate stock register, M.O. Miller had actual knowledge of the stock restriction since he had previously received the letter from Mr. Scott informing him of the restriction.
La.R.S. 10:8-308 provides in part that:
"(1) An indorsement of a security in registered form is made when an appropriate person signs on it or on a separate document an assignment or transfer of the security or a power to assign or transfer it or when the signature of such a person is written without more upon the back of the security.
(2) An indorsement may be in blank or special. An indorsement in blank includes an indorsement to bearer. A special indorsement specifies the person to whom the security is to be transferred, or who has power to transfer it. A holder may convert a blank indorsement into a special indorsement....".
La.R.S. 10:8-309 provides:
"An indorsement of a security whether special or in blank does not constitute a transfer until delivery of the security on which it appears or if the indorsement is on a separate document until delivery of both the document and the security."
It is recognized in Louisiana that in determining whether or not a transfer has been made between the parties the court may look to the intent of the parties. Succession of Dunham, 408 So.2d 888 (La. 1981); Succession of Goudeau, 480 So.2d 806 (La.App. 3 Cir.1985), writ den., 481 So.2d 1338 (La.1986), and cases cited therein.
La.R.S. 12:601 of the Uniform Stock Transfer Act provides as follows:
"The person, firm, or corporation, in whose name a certificate representing shares of stock stands, or to whom a certificate is endorsed, whether in full or in blank, and who has possession of said certificate, shall be regarded as the legal owner. The legal owner has full power to pledge, sell or otherwise dispose of said stock. No person, corporation, firm or transfer agent shall be responsible to any one claiming any interest in, or ownership of, said shares, or any part thereof, by virtue of any undisclosed or latent legal or conventional title or interest therein."
In commenting upon La.R.S. 12:601, the Louisiana Supreme Court has stated:
"The purpose of this statute, rather than to provide the requirements for a valid and irrevocable transfer of stock, is to provide protection for third persons who deal with the record owners of the *337 stock and also to establish when one may be considered the record owner. Finn v. Ponsaa, 308 So.2d 352 (La.App. 4th Cir. 1975), writs denied 313 So.2d 238 (La. 1975). In further support of this premise are a number of cases which hold that the Uniform Stock Transfer Act is not the exclusive means of transferring stock or evidencing ownership of it. Broussard v. Broussard, 340 So.2d 1309 (La.1976); Primeaux v. Libersat, 322 So.2d 147 (La.1975); Dardeau v. Fontenot, 326 So.2d 521 (La.App. 3rd Cir.1976); Smith v. Smith, 311 So.2d 514 (La.App. 3rd Cir.1975), writs denied, 313 So.2d 840 (La.1975); Richard v. Foods and Services, Inc., 162 So.2d 213 (La.App. 1st Cir. 1964); Alley v. Miramon, 614 F.2d 1372 (5th Cir.1980). Therefore, as has been previously held, although R.S. 12:601 may protect third persons dealing with the apparent owner of the stock, as between the parties compliance with R.S. 12:601 does not necessarily indicate a transfer of ownership. Rather, we must look to the intent of the parties. Alley v. Miramon, supra; Broussard, supra; and Primeaux v. Libersat, supra." Succession of Dunham, 408 So.2d 888, at page 893 (La.1981).
In the present case, it is undisputed that Mrs. Miller endorsed the stock certificate and delivered it to M.O. Miller on November 21, 1979. With regard to third parties, M.O. Miller was at that time the legal owner of the stock represented by the stock certificates. La.R.S. 12:601. As between the parties to the sale, both M.O. Miller and Mrs. Miller testified that it was their intent to transfer the stock on November 21, 1979. At that time there was an agreement as to object and price, and, therefore, there was a sale. La.C.C. 2456. See also, Finn v. Ponsaa, 308 So.2d 352 (La.App. 4 Cir.1975), writ den., 313 So.2d 238 (La.1975). There is no requirement that the transfer of stock be recorded on the books of a corporation before a sale of stock is considered complete. Recordation of a stock transfer on the corporate books adds nothing to the validity of the sale. Cf. Succession of Dunham, supra; Feldheim v. Plaquemines Oil and Development Co., 282 So.2d 469 (La.1973); Finn v. Ponsaa, supra; Union Bank v. Desban, 2 Rob. 486 (New Orleans, June, 1842).
Finally, the "actual knowledge" provision found in La.R.S. 10:8-204 refers to knowledge at the time of the transfer. Thibodeaux v. Pioneer Land Development, etc., supra. The policy behind La. R.S. 10:8-204 deals with the protection of purchasers of stock who have no notice of a stock transfer restriction when they purchase the stock. See Comments under La. R.S. 10:8-204. As the Fourth Circuit Louisiana Court of Appeal noted in Finn v. Ponsaa, 308 So.2d 352 (La.App. 4 Cir.1975), writ den., 313 So.2d 238 (La.1975):
"LSA-R.S. 12:624 [Now LSA-R.S. 10:8-204] has reference to legal title only. Its main purpose is to confer on certificates for corporate shares the attributes of negotiability and to protect third persons who give value upon the faith of the certificates." Finn v. Ponsaa, 308 So.2d 352, at page 355 (La.App. 4 Cir.1975), writ den., 313 So.2d 238 (La. 1975).
We agree that only the buyer's knowledge at the time of the sale is relevant, not after-the-fact knowledge. It is immaterial that M.O. Miller had actual knowledge of the stock restriction when LARCO actually transferred the shares represented by Mrs. Miller's certificate to his name. He had no such knowledge at the time of the sale of the shares to him.
Plaintiff further argues that this court should hold that "actual knowledge" is not applicable to a small, closely held family corporation. We see no basis for such a distinction considering the policy behind La.R.S. 10:8-204. See generally, Thibodeaux v. Pioneer Land Development, Etc., supra, applying La.R.S. 10:8-204 to a closely held corporation.
Because we find the transfer of stock to be valid for the reasons given above, we will not discuss the other issues raised in the briefs of the parties to this appeal, nor the merits of the alternative requests for relief urged by plaintiff.
*338 For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to plaintiff-appellant.
AFFIRMED.